PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                    No. 02-4294

THOMAS A. CURTIS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-01-1)

Argued: February 28, 2003

Decided: May 7, 2003

Before WIDENER and LUTTIG, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Luttig and Senior Judge Beam concurred.

---

## COUNSEL

**ARGUED:** Elgine Heceta McArdle, MCARDLE LAW OFFICES,
Wheeling, West Virginia, for Appellant. Robert H. McWilliams, Jr.,
Assistant United States Attorney, Wheeling, West Virginia, for
Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney,

David J. Perri, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

## OPINION

WIDENER, Circuit Judge:

### I.

The defendant, Thomas Curtis, challenged the government's introduction of psychiatric testimony at his trial. Curtis argues that the government's introduction of such testimony was prohibited under Federal Rule of Criminal Procedure 12.2(c) and violated his Fifth Amendment right against compelled self-incrimination. We are of opinion that Fed. R. Crim. P. 12.2(c) did not prohibit the government from introducing psychiatric testimony to rebut Curtis's defense that he was more susceptible to entrapment than the average person due to a head injury which he had suffered in 1997. We also are of opinion that Curtis's constitutional rights were not violated because Curtis essentially waived his Fifth Amendment right against self-incrimination by raising a mental status defense and offering psychiatric testimony in support of that defense.

### II.

On January 8, 2001, a federal grand jury in the Northern District of West Virginia returned a six count indictment. The indictment charged a drug-related conspiracy from 1996 until 2001 under 21 U.S.C. § 846; three counts of distribution of the illegal drugs hydrocodone, oxycodone and cocaine; one count of the unlawful use of a telephone in the distribution of oxycodone; and one count requesting the forfeiture of two automobiles. Curtis was convicted of all except Count 3, the telephone count, and forfeiture was ordered for one automobile.

On February 8, 2001, Curtis filed a notice that he intended to introduce expert testimony relating to a mental disease, defect, or condition bearing upon his guilt pursuant to Federal Rule of Criminal

Procedure 12.2(b). Curtis concedes that he intended to introduce expert testimony in support of his defense that he suffered from a "cognitive dysfunction" which made him "more susceptible to entrapment by government agents" and that this condition was caused by an explosion resulting in a head injury he received while working in a steel mill in 1997. In response, the government filed a motion requesting the court to order a psychological or psychiatric examination of the defendant pursuant to 18 U.S.C. § 4242(a). On February 16, 2001, the district court granted the government's motion and ordered Curtis transported to a facility for the purpose of conducting a psychiatric and psychological examination to determine whether Curtis "was, at the time of the alleged offenses, insane or if he had a mental condition bearing upon the issue of guilt." On March 2, 2001, the court vacated its February 16, 2001 order committing Curtis because the court discovered that Curtis had been released on bond and was not in custody when it had entered the order.

On March 19, 2001, the court held an evidentiary hearing and determined that the government may have the defendant examined by a psychiatrist or a psychologist of its choice and stated that it might reconsider the government's request to have Curtis committed to determine competency to stand trial at a later date.

In August 2001, Dr. Jonathon M. Himmelhoch, M.D., interviewed Curtis at the defense's request and reported that Curtis was "sufficiently brain damaged that he [could] [ ]not conform his behavior to the requirements of law; moreover, he possesse[d] that character structure which combined with cognitive injury, almost invariably produces a man (or woman) who will do whatever he/she is asked." He also stated that Curtis's post-injury IQ dropped to around 60 from a high school IQ of 110 and that such a drop indicates that Curtis suffers from significant dementia. After receiving Dr. Himmelhoch's letter, the government filed a motion to require Curtis to submit to a psychiatric and psychological examination to determine his competency to stand trial and insanity at the time of the offenses. The defense objected arguing that it never indicated an intent to rely upon an insanity defense and never indicated that Curtis was not competent to stand trial.

On October 16, 2001, the district court held a competency hearing and found that Curtis was competent to stand trial. The defense filed

a motion *in limine* requesting that the government be prevented from using incriminating statements made by Curtis to the government's mental health professionals during the competency evaluation. The court found that the government could not "introduce the defendant's statements that are included in the competency report unless the defendant uses the competency report as a defense."

On December 17, 2001, a five-day jury trial commenced. During the trial, the defense called a psychiatrist and a psychologist who both testified that Curtis was more susceptible to persuasion or suggestion than the average person due to the injury he suffered in 1997. Prior to rebuttal, the government notified the court that it intended to call the psychiatrist and the psychologist who had examined Curtis on its behalf for his competency to stand trial and whose reports also included opinions as to the validity of his claimed mental condition. The defense argued that the introduction of these experts' testimony violated Curtis's Fifth Amendment rights if the experts' testimony was based on incriminating statements made by Curtis. The district court determined that any incriminating statements contained in the experts' reports could not be introduced at trial. However, the court allowed the government experts to testify as to whether they believed, based upon his history and the testing that had been done, that Curtis possessed a mental condition making him more susceptible to entrapment than the average person.

Both the government-retained psychologist and psychiatrist testified that Curtis was pretending to have the mental condition. Dr. Thomas R. Adamski, the government-retained psychiatrist, testified that Curtis was "feigning being seriously ill, including having medical problems." He further stated that Curtis was "faking bad" in terms of his psychiatric symptoms and his I.Q. and that the MRI of Curtis's brain showed changes in the blood vessels caused from high blood pressure not from blunt force trauma. Dr. Fred Jay Kreig, the government-retained psychologist, testified that Curtis was "malingering, that he was faking mental problems."

On December 21, 2001, the jury found Curtis guilty of all counts, except the use of a telephone to commit a drug felony. The jury also ordered forfeiture of one of the vehicles listed in the forfeiture count. The district court sentenced Curtis to 63 months imprisonment on

each count, to run concurrently, which was to be followed by three years of supervised release.

III.

The sole issue raised in this appeal is whether the government violated Curtis's constitutional rights when it introduced psychiatric testimony based on interviews conducted with Curtis pursuant to the government's motion for a competency evaluation. The government argues a plain error standard should apply.[1] See *United States v. Olano*, 507 U.S. 725 (1993).

Curtis argues that his conviction should be reversed because the government violated his Fifth Amendment right against self-incrimination when it used psychiatric testimony which was based in part on statements Curtis made during his competency examination. Curtis claims that the government's use of the psychiatric testimony was prohibited by Fed. R. Crim. P. 12.2(c) because Curtis did not raise an insanity defense nor did he use the competency report as a defense, as provided for in the district court's order. In response, the government contends that the government never introduced any incriminating statements made by Curtis to the government-retained mental health professionals. Instead, the government argues, it called its own experts only to rebut Curtis's diminished capacity defense, which is not prohibited under Federal Rule of Criminal Procedure 12.2(c). We agree with the government.

Federal Rule of Criminal Procedure 12.2(c)[2] provides:

---

[1]The government takes the position that the defendant must depend on the plain error standard for his objection to any psychiatric testimony offered by the government. While an extremely fine parsing of all the papers, hearings, and rulings made during the case might lead to this conclusion, we think it is unnecessary and do not hold the defendant to the requirements of plain error. The question of the psychiatric testimony was discussed in detail from time to time throughout the trial, and we have not been shown that the district court committed error at all in admitting such testimony, much less plain error.

[2]Federal Rule of Criminal Procedure 12.2(c) has been amended since the parties' reliance upon it. The corresponding 2003 provision is Fed.

> In an appropriate case the court, may upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. § 4241 or 4242. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, *no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.*

Fed. R. Crim. P. 12.2(c) (2002) (emphasis added). We have reviewed the government-retained experts' testimony, in accord with the ruling of the district court, and neither expert introduced incriminating statements made by Curtis relating to his alleged drug dealing activity. Instead, both experts' testimony related solely to the validity of Curtis's alleged mental condition as to which he introduced psychiatric testimony. Hence, the government complied with Fed. R. Crim. P. 12.2(c) and with the district court's order not to introduce statements made by Curtis which were contained in the competency report, unless the defense introduced the competency report as a defense.

Curtis argues that the government-retained experts should not have been allowed to testify at all during the guilt phase of his trial. We find no error in the introduction of the government-retained experts' testimony. Curtis introduced testimony from his own psychiatrist and psychologist to support his mental status defense. The government then introduced psychiatric testimony in rebuttal. We have addressed this issue and found that

> [w]hen a defendant asserts a mental status defense and introduces psychiatric testimony in support of that defense, he may face rebuttal evidence from the prosecution taken from

R. Crim. P. 12.2(c)(4)(A). We will consider the pre-amendment version in rendering this decision because the parties relied upon it in the lower court and in their briefing in this court and district court relied upon it in allowing the experts to testify.

his own examination or he may be required to submit to an evaluation conducted by the prosecution's own expert. *That defendant has no Fifth Amendment protection against the introduction of mental health evidence in rebuttal.* In essence, the defendant waives his right to remain silent . . . by indicating that he intends to introduce psychiatric testimony.

*Savino v. Murray*, 82 F.3d 593, 604 (4th Cir. 1996) (citations omitted) (emphasis added); see also *Buchanan v. Kentucky*, 483 U.S. 402, 422-24 (1987) (noting that if defendant presents psychiatric evidence, the government may introduce psychiatric evidence in rebuttal). Furthermore, Fed. R. Crim. P. 12.2(c) clearly provides that the government may introduce expert testimony *if* the defendant has raised the issue of his mental condition. Thus, under Fed. R. Crim. P. 12.2(c) and the principles set forth by this court in *Savino*, the introduction of the government-retained experts' testimony in rebuttal did not constitute error because the defense initially raised the issue of Curtis's mental status and introduced evidence which tended to support the issue.

Accordingly, the judgment of the district court is

*AFFIRMED.*