Chief Judge GIERKE
delivered the opinion of the Court.
Generally, in the absence of a privilege, any relevant statement by an accused could be admitted into evidence by the Government as a statement of a party opponent.[1] M.R.E. 302, however, maintains the integrity of the sanity review process by protecting an accused when a sanity review board is ordered under Rule for Courts-Martial (R.C.M.) 706. Any statement made by the accused or any derivative evidence obtained through use of such a statement is confidential and may not be admitted into evidence.[2] But there is no privilege under M.R.E. 302 when the accused first introduces into evidence any qualifying statements or derivative evidence.
This case presents the issue of whether the military judge violated the M.R.E. 302 privilege rule when he granted the Government’s motion to compel the production of Appellant’s statements in the sanity board report. We hold that the military judge erred by releasing Appellant’s privileged statements to the Government. We conclude that Appellant’s defense counsel did not first introduce derivative evidence. Accordingly, the defense did not trigger M.R.E. 302’s exception permitting disclosure of Appellant’s statements to the sanity board.
BACKGROUND
Contrary to Appellant’s pleas, a military judge found him guilty of disobeying a lawful order, wrongfully using psilocyn,[3] and breaking restriction, in violation of Articles 90, 112a, and 134, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 912a, and 934.[4] In addition, the military judge found Appellant guilty, pursuant to his pleas, of wrongfully using methamphetamine, in violation of Article 112a, UCMJ.[5] He sentenced Appellant to a bad-conduct discharge, six months of confinement, forfeiture of $600 pay per month for six months, and reduction to the grade of E-l.
When Appellant violated an order not to drive and attempted to leave base, Appellant admitted to his first sergeant, Senior Master *197 Sergeant Crute, that he knew it was -wrong to leave base while on restriction. The next day Appellant was hospitalized because his co-workers thought he displayed irregular behavior. Between May 31, 2001, and June 6, 2001, Dr. Peterson treated Appellant and prescribed a mood stabilizer, a sedative and a “very high potency anti-psychotic” medication for Appellant. Appellant remained in Dr. Peterson’s care until the end of June 2001.
At the defense counsel’s request, Dr. Gregoria Marrero held an R.C.M. 706 sanity board to assess Appellant’s mental responsibility for the charged offenses. She submitted a complete report of her findings. During the trial, the defense decided not to rely on the results of the sanity board. The defense instead called Dr. Peterson to testify. The military judge qualified Dr. Peterson as an expert in the field of psychiatry, and she testified about her impressions of Appellant during the period she was treating him. She described Appellant’s beliefs that “he had special powers, special abilities” and “could read [people’s] minds.” Dr. Peterson explained that it was “fairly difficult to follow his train of thought, even though he was coherent” because Appellant was speaking very rapidly and “basically jumping from topic to topic.” Dr. Peterson concluded that she believed Appellant had a manic episode, most likely due to Bipolar I disorder. Regarding whether Appellant knew the nature and quality or wrongfulness of his actions on May 29 and 30, Dr. Peterson stated, “Given the way he presented to me and my experience working with people who have had a manic episodes [sic] where it builds up over a matter of a few days, I could only surmise that it would affect his ability — his judgment.”
The defense did not inquire into the results of the sanity board during the direct examination of Dr. Peterson. However, Dr. Peterson admitted that she had reviewed Dr. Marrero’s report. When asked whether she reviewed the report before forming her opinion, Dr. Peterson replied, “No and I wouldn’t want to. No. I looked at all the other information first then met with him.” She explained that she did not base her opinion on the report. Rather, “I just wanted to see what my colleague — what her findings were. I came to my own conclusion and then I wanted to look at that and see what she had drawn up.”
The military judge conducted his own inquiry of Dr. Peterson and asked about the impact of the sanity board report on her diagnosis. Dr. Peterson reaffirmed that her opinion was formed independent of Dr. Marrero’s report. But the military judge asked, “Did Colonel Marrero reference within the report any statements made by Airman Clark?” Dr. Peterson confirmed that Dr. Marrero had included Appellant’s statements in the report and that she had reviewed them.
The Government then argued that in light of the defense testimony, the Government should have an opportunity to interview Dr. Marrero regarding her examination of Appellant and to fully review her report from the sanity board. The military judge granted the Government’s motion and, over defense counsel’s objection, ordered the defense to produce and to disclose to the prosecution the sanity board report, which included Appellant’s statements. The military judge did not make any findings of fact regarding this issue and did not explain his decision. The military judge did not allow the defense to redact Appellant’s statements from the report.
As a result, the Government presented Dr. Marrero as a prosecution witness. Although the military judge did not allow the Government to enter the sanity board report into evidence, Dr. Marrero testified to the entire contents of the report including Appellant’s admissions of culpability and his attempts to feign mental problems. Furthermore, at the trial, Dr. Marrero revealed more of her interview with Appellant than she included in her report. For example, when Dr. Marrero questioned Appellant about his declarations to treatment staff that he was God, he responded “[t]hat he was playing along and enjoying the attention that he was getting.”
DISCUSSION
In federal civilian courts, if a defendant presents an insanity defense with expert wit *198 nesses to confirm his infirmity, the prosecution may compel the defendant to submit to a psychiatric evaluation by the Government.[6] The medical expert who examined the accused may testify only to his conclusions and their basis and cannot reveal the contents of any statements the accused made during the examination because the defendant is still protected by the doctor-patient privilege.[7]
Court-martial practice has a similar process to protect statements to a sanity board but different rules pertain. M.R.E. 302 guarantees a servicemember a right to confidentiality comparable to a civilian under Fed. R. Crim. P. 12.2(c)(4). The military accused often must rely on military doctors for evaluation and treatment. But there is generally no doctor-patient privilege in the military.[8] As a result, the prosecution could retrieve any records of medical diagnosis or treatment. The drafters of M.R.E. 302 recognized this uniquely military concern. They noted that “even when the actual communications made by the accused are not revealed by the expert witness in open court, under the present Manual they may be studied by the prosecution and may be used to discover other evidence later admitted against the accused.”[9] Accordingly, M.R.E. 302 was proposed and implemented to provide “a form of testimonial immunity intended to protect an accused from use of anything he might say during a mental examination” ordered under R.C.M. 706.[10] Contrary to the dissent’s assertions, M.R.E. 302 does not distinguish between a psychiatric evaluation ordered by the Government and an evaluation requested by the defense. R.C.M. 706(a) allows “any investigating officer, trial counsel, defense counsel, military judge, or member” to request “an inquiry into the mental condition of the accused.”[11] And M.R.E. 302 applies to any “mental examination ordered under R.C.M. 706.”[12] “It is a general rule of statutory construction that ‘if the statute is clear and unambiguous, a court may not look beyond it but must give effect to its plain meaning____’”[13] We reject the dissent’s invitation to construe M.R.E. 302 in a manner clearly inconsistent with its plain meaning.[14]
“[T]he creation of Rule 302 was purely to protect the privilege against self-inerimination of an accused undergoing a mental ex-amination____”[15] Accordingly, M.R.E. 302 includes a provision that generally prohibits use of any derivative evidence of an accused’s statements to the sanity board to determine guilt or innocence or during the sentencing phase of a court-martial.[16] “There is no privilege under this rule when the accused first introduces into evidence such statements or derivative evidence.”[17]
*199 Following the Supreme Court’s decision in Jaffee v. Redmond,[18] the President adopted a psychotherapist-patient privilege for the military justice system with the implementation of M.R.E. 513.[19] The rule allows a patient the privilege to refuse to disclose, or allow another to disclose, a confidential communication between the patient and a psychotherapist. But this rule “is not a physician-patient privilege.”[20] Rather, it is “based on the social benefit of confidential counseling recognized by Jaffee, and similar to the clergy-penitent privilege.”[21] M.R.E. 513 intends to safeguard statements “made for the purpose of facilitating diagnosis or treatment of the patient’s mental or emotional condition.” [22] An exception to M.R.E. 513, however, eliminates the privilege “when an accused offers statements or other evidence concerning his mental condition in defense, extenuation, or mitigation.”[23] Because Appellant presented an insanity defense, he could not have claimed a psychotherapist-patient privilege under M.R.E. 513.
This Court has previously addressed whether an expert’s diagnosis sufficiently derives from a sanity board report to warrant its release to the prosecution. In United States v. Bledsoe,[24] the prosecution called Dr. Townsend-Parchman, a member of the accused’s sanity board, to testify about the results of the board during its case-in-chief. The defense called Dr. Martin to testify that he and two other members of the sanity board had concurred in a diagnosis that the accused had a “conversion disorder.”[25] After the direct examination of Dr. Martin, the trial counsel asked to review the sanity board report. The prosecution alleged that Dr. Martin’s testimony opened the door to the accused’s medical history, “particularly the statements made by the accused in the evaluation process.”[26] The trial counsel requested access to those statements alleging they were necessary for an effective cross-examination of Dr. Martin. The military judge overruled a defense objection and provided the sanity board documents to the prosecution. While this Court held there was no prejudicial error in Bledsoe, we expressed “doubt that the diagnosis offered by a defense expert can, in and of itself, be considered ‘derivative evidence’ merely because it is based in part on what the accused has told the examining psychiatrists.”[27]
In this case, the Government alleges that Appellant waived his right to the privilege by submitting derivative evidence from the sanity board, specifically expert testimony of a psychiatrist who reviewed the report. We disagree.
The Government concedes that “the defense did not elicit statements made by Appellant during his sanity board.” The Government asserts, however, that Appellant presented derivative evidence because Dr. Peterson admitted that she had read the report before testifying and thus “opened the door” for the Government. While Dr. Peterson admitted on direct examination that she “reviewed the sanity board [report] written by Doctor Marrero,” she further clarified that she did not read the report until after forming her own opinion. Aside from this single statement by Dr. Peterson, the defense counsel’s direct examination did not mention or allude to the report or the included statements.[28] The military judge, howev *200 er, elicited information regarding the sanity board report.
M.R.E. 302 was specifically drafted to allow the defense to control whether an accused’s statements to a sanity board would be released to the prosecutors and presented at the court-martial. If the defense does not allege insanity at court-martial, or does so only through lay testimony, the sanity board report will not be provided to the prosecution. But “[i]f the defense offers expert testimony concerning the mental condition of the accused,” the military judge shall compel the defense to release to the prosecution “the full contents, other than any statements made by the accused,” of the sanity board report.[29] “If the accused presents a defense, however, which includes specific incriminating statements made by the accused to the sanity board, the military judge may order disclosure to the trial counsel of ‘such statement ... as may be necessary in the interest of justice.’ ”[30] While the defense chose to present an insanity defense in this case, Dr. Peterson’s testimony relied only on her own treatment of Appellant and did not in any way reveal to the members Appellant’s incriminating statements to the sanity board.
In this case, the defense counsel’s direct examination of Dr. Peterson is not derivative evidence, and therefore Appellant did not waive his right to confidentiality under M.R.E. 302. Once the defense offers expert testimony concerning an accused’s mental condition, M.R.E. 302(e) allows the military judge to provide the Government with the sanity board report after redacting the accused’s statements. Here, the military judge provided the entire sanity board report to the Government, and he allowed the Government to elicit Appellant’s statements from a Government rebuttal witness. This violated the privilege extended to Appellant by M.R.E. 302.
The military judge abused his discretion by releasing the sanity board report to the prosecution in its entirety and allowing the Government to admit Appellant’s statements into evidence. While the defense requested Appellant’s sanity board, M.R.E. 302 afforded Appellant a privilege to prevent the Government from using his statements against him.
To determine the impact of the improper testimony, we must first determine whether the military judge’s release and admission of Appellant’s statements is constitutional error. It is not. The Supreme Court has concluded that if a defendant requests the psychiatric evaluation or presents an insanity defense, “The defendant would have no Fifth Amendment privilege against the introduction of [testimony from his psychiatric evaluation] by the prosecution.”[31] Because Appellant requested the sanity board, he may not claim a Fifth Amendment violation because the Government did not compel his appearance at the board. Here, the disclosure resulted in a trial error. The military judge’s ruling violated a privilege guaranteed to Appellant under M.R.E. 302.
“For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings.”[32] Our consideration “cannot be merely whether there was enough to support the result,” aside from the military judge’s error.[33] We must also examine “whether the error itself had substantial influence.”[34] To evaluate the prejudice from the military judge’s erroneous ruling, we consider “(1) the strength of the Government’s case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence *201 in question.”[35] After evaluating each of these factors, we remain uncertain whether Appellant’s conviction was “substantially swayed by the error.”[36] Appellant was prejudiced not only by the military judge’s decision to release to the Government Appellant’s statements in the report, but also by the Government’s later use of those statements and others made to the report’s author to rebut Appellant’s claims of diminished mental responsibility. The Government called only one expert witness, Dr. Marrero, to rebut the insanity defense. Dr. Marrero’s testimony was not limited to her conclusions; rather, she freely recalled Appellant’s statements and behavior during the sanity board.[37] Dr. Marrero testified that Appellant said, “I know what I was doing,” and that he was not concerned with his punishment since “the worst that could happen was getting out of the military.” Dr. Marrero farther described Appellant’s attitude when he admitted that “he was playing along and enjoying the attention that he was getting.” Dr. Marrero examined Appellant only once: when she conducted the R.C.M. 706 sanity board. Accordingly, the statements that she recounted were necessarily made as part of the sanity board process. The military judge should not have given the prosecution Appellant’s statements to the sanity board. He further compounded the error by allowing the Government to elicit testimony about Appellant’s statements during the cross-examination of Dr. Peterson and the direct examination of Dr. Marrero.
The Government’s case relied heavily on the improper testimony of the sole member of Appellant’s sanity board.[38] While Appellant’s first sergeant testified that Appellant appeared normal to her on May 29, 2001, it is reasonable to assume that the military judge would have given more weight to a doctor’s diagnosis. The insanity defense may have succeeded if the military judge had not released Appellant’s privileged statements to the Government and allowed the prosecution to use them to his detriment.
DECISION
The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty to Charges II and IV, their specifications, and the sentence are set aside. The findings of guilty to the remaining charge and specification are affirmed. The record is returned to the Judge Advocate General of the Air Force with authorization for a rehearing on Charges II and TV. If there is not a rehearing on the findings, a sentence rehearing on the remaining charge and specification may be held. If the convening authority determines that a sentence rehearing is impracticable then he may approve a sentence of no punishment.

. See generally Military Rules of Evidence (M.R.E.) 801(d)(2) (admitting a party’s own statement into evidence against that party).

. See R.C.M. 706(c)(5), Manual for Courts-Martial, United States (2000 ed,)(MCM).

. The Air Force Court of Criminal Appeals later set aside this charge and specification on factual insufficiency grounds. United States v. Clark, 60 M.J. 539 (A.F.Ct.Crim.App.2004).

. 10 U.S.C. §§ 890, 912a, 934 (2000).

. 10 U.S.C. § 912a (2000).

. See Fed.R.Crim.P. 12.2.

. See Fed.R.Crim.P. 12.2(c)(4). See, e.g., United States v. Curtis, 328 F.3d 141, 144 (4th Cir.2003); United States v. Johnson, 362 F.Supp.2d 1043, 1087-97 (N.D.Iowa 2005).

. See M.R.E. 501(d).

. MCM, App. 22, A22-7 (2000 ed.)(referring to the Manual for Courts-Martial, United States (1969 revised ed.)).

. Id. at A22-8.

. R.C.M. 706(a), MCM (2000 ed.).

. M.R.E. 302(a).

. United States v. McGowan, 41 M.J. 406, 413 n. 4 (C.A.A.F.1995) (quoting Tibbs v. United States, 507 A.2d 141, 143-44 (D.C.App.1986)). The Manual for Courts-Martial is interpreted according to rules of statutory construction. United States v. Lucas, 1 C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951).

. The dissent does not provide any citation of authority to support its assertion that "[t]he R.C.M. 706 evaluation in this case was not one contemplated by the drafters.” 62 M.J. 195, 204 n. 1 (C.A.A.F.2005) (Crawford, J., dissenting). Regardless, this situation is clearly within the ambit of the plain meaning of R.C.M. 706, which expressly lists the defense counsel as one of the individuals who shall transmit to appropriate authority that he/she has reason to believe the accused lacks mental responsibility or mental competence. Query: if the rule were as the dissent proposes, how often would a defense counsel seek an R.C.M. 706 evaluation of the accused?

. MCM, App. 22, at A22-8.

. See M.R.E. 302(a).

. M.R.E. 302(b)(1).

. 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

. Exec. Order No. 13, 140, 64 Fed.Reg. 55, 115, 55, 116-17 (Oct. 12, 1999).

. MCM, App. 22, at A22-44.

. Id.

. M.R.E. 513(a).

. M.R.E. 513(d)(7).

. 26 M.J. 97 (C.M.A.1988).

. Id. at 100.

. Id.

. Id. at 103.

. The dissent asserts that Dr. Peterson's testimony was "at least to some colorable degree, 'received from’ or 'deduced from’ ” the sanity board report. 62 M.J. at 205 (Crawford, J., dissenting). But Dr. Peterson's testimony affirms the defense’s claim that Dr. Peterson did not rely on the sanity board report in her evaluation of Appellant.

. M.R.E. 302(c).

. MCM, App. 22, at A22-9 (quoting M.R.E. 302(c)).

. Buchanan v. Kentucky, 483 U.S. 402, 422-23, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). See also United States v. Byers, 740 F.2d 1104, 1111-13 (D.C.Cir.1984).

. United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F.2003) (citing United States v. Walker, 57 M.J. 174, 178 (C.A.A.F.2002)).

. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

. Id.

. United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F.1999)(citing United States v. Weeks, 20 M.J. 22, 25 (C.M.A.1985)).

. Kotteakos, 328 U.S. at 765, 66 S.Ct. 1239.

. The dissent states that the "prosecution did not seek to admit the accused's statement to Dr. Marrero, but to obtain the conclusions from that expert, which are based on case-specific facts.” 62 M.J. at 206 (Crawford, J., dissenting). The prosecution, however, did attempt to admit into evidence the entire sanity board report. While the military judge did not allow the report to be admitted into evidence, he did allow the trial counsel to elicit Appellant’s statements from Dr. Marrero during direct examination.

. We do not question Dr. Marrero’s qualifications as a psychiatrist nor do we suggest that Dr. Marrero is incompetent, as suggested by the dissent. But we do hold that her testimony was improper under the Military Rules of Evidence.