*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, KING, and ATTANASIO,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Felix AYALACRUZ**
Sergeant (E-5), U.S. Marine Corps
Appellant

**No. 201800193**

Argued: 27 September 2019—Decided: 10 January 2020.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC. Sentence adjudged 2 March 2018 by a special court-martial convened at Camp Foster, Okinawa, Japan, consisting of officer members. Sentence approved by the convening authority: reduction to pay grade E-1, a reprimand, and a bad-conduct discharge.

For Appellant: Lieutenant Gregory Hargis, JAGC, USN.

For Appellee: Lieutenant Joshua C. Fiveson, JAGC, USN; Lieutenant Jonathan O. Todd, JAGC, USN; Captain Brian Farrell, U.S. Marine Corps.

Chief Judge CRISFIELD delivered the opinion of the Court, in which Senior Judge KING and Judge ATTANASIO joined.

_____

**PUBLISHED OPINION**

_____

CRISFIELD, Chief Judge:

Officer members sitting as a special court-martial convicted Appellant, contrary to his pleas, of one specification of dereliction of duty, one specification of simple assault, and one specification of disorderly conduct, in violation, respectively, of Articles 92, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 928, 934 (2012).

Appellant raises six assignments of error (AOE): (1) the military judge violated Appellant's constitutional protection against double jeopardy when he directed the members to clarify their findings; (2) the military judge abused his discretion by improperly impeaching the members' initial findings; (3) the assault specification, as amended by the members, fails to state an offense; (4) a bad-conduct discharge is inappropriately severe for the offenses of which the Appellant was found guilty; (5) the finding of guilty to the disorderly conduct specification is not legally or factually sufficient; (6) it was plain error for the military judge to not conditionally dismiss the disorderly conduct specification as an unreasonable multiplication of charges with the other charges. We find merit in AOE (3) and therefore do not address AOEs (1) and (2) as moot. AOE (4) is not ripe for adjudication based on our resolution of AOE (3). We find no merit in the remaining AOEs and return the record of trial to the Judge Advocate General for submission to an appropriate convening authority. A rehearing on sentence is authorized

## I. BACKGROUND

On 20 June 2017 Appellant was the duty noncommissioned officer on watch in barracks onboard Camp Foster, Okinawa. While on a break, Appellant told the assistant duty Marine that he was "going to visit his homegirl and maybe take a nap in [her] room." Appellant then left his barracks and walked to Sergeant E.H.'s barracks. He had met Sergeant E.H. once before and stayed in touch with her via text messages. When he tried to enter Sergeant E.H.'s barracks he was questioned by several Marines as to who he was. Appellant falsely claimed that he was with the Transportation Support Battalion and gained entry to the barracks. Appellant then went to Sergeant E.H.'s room and knocked on her door, but she was not present. Appellant departed the barracks, but returned several hours later and made the same misrepresentation in order to gain access to the building. On his second visit, the Appellant knocked on Sergeant E.H.'s door and she answered. Sergeant E.H. testified that Appellant pushed past her to get into her room uninvited.

Once in the room, Appellant removed his cover, duty belt, and his blouse. Sergeant E.H. moved to her bed out of fear and climbed under the sheets. She had a knife near the bed, which she grabbed and placed under her sheets. Appellant moved toward Sergeant E.H.'s bed and asked her to dance with

him. Sergeant E.H. testified that Appellant then "leaned his body over [her] legs, holding them down." Sergeant E.H. retrieved her cell phone and text-messaged Sergeant T, her barracks' duty noncommissioned officer. Sergeant E.H. told Sergeant T to "come bang on the door;" that she needed help; that she was not kidding; and that he needed to come to "kick [Appellant] out."

Sergeant E.H. asked Appellant to leave her room, but he refused. Sergeant T then arrived and, after speaking briefly to Sergeant E.H., escorted Appellant from the room. Shortly thereafter, Sergeant E.H. text-messaged Appellant: "next time anyone tells you to leave you [expletive] leave! I was uncomfortable." Appellant responded: "yea I should've listened to my senses sorry about that." This incident formed the basis for all three charges and specifications against Appellant.

The sole Specification under Charge II, alleging assault consummated by a battery, in violation of Article 128, UCMJ, read:

> In that Sergeant Felix Ayalacruz, U.S. Marine Corps, while on active duty, did, at or near Okinawa, Japan, on or about 20 June 2017, unlawfully touch and hold down the leg of Sergeant [E.H.], U.S. Marine Corps, with his hands and arms.

Before deliberations began, the military judge instructed the members on the elements of simple assault as a potential lesser-included offense of the charged assault consummated by battery, and how to render findings by exceptions and substitutions. During their deliberations, the members asked the military judge whether "physical contact [has] to occur" or whether the members could "re-write the specification to exclude part 2?" The military judge instructed that "while the definitions and other instructions indicate that an offensive touching is not required, such an offensive touching is not precluded" and that the members "may make findings by exceptions and substitutions . . . by striking certain language in the specification similar to the example number one on page 8 [of Appellate Exhibit XLIV]." The members resumed deliberations and subsequently informed the military judge that they had reached a verdict.

Upon his review of the findings worksheet, the military judge determined that the members failed to properly except language from the Specification. He instructed the members that "all of the portions of the worksheet that do not apply, you should draw a line through all of that. Only leave what you're going to be reading clear." Soon thereafter the members returned with a "corrected" findings worksheet, but the military judge found another error. This time the members indicated that they had found the Appellant guilty of offenses under Charges I and II, but crossed out both the "guilty" and "not guilty" options pertaining to the charges. In other words, the members did not indicate that they had found the Appellant guilty of the charge, despite

indicating guilt as to the corresponding specification. The military judge then sent the members back to the deliberation room with a new findings worksheet. The members filled out this findings worksheet and returned it to the military judge, who declared it in proper form.

The members announced that the Appellant was guilty by exceptions and substitutions to Charge I (Dereliction of Duty), and guilty to Charge III (Disorderly Conduct). As to Charge II, the members found the appellant guilty of the lesser-included offense of Simple Assault, by exceptions alone. For the Specification of Charge II, the members announced: "guilty, except the words 'that the accused did so by touching and holding down [Sergeant E.H.'s] leg with his hands and arms and that the attempt or offer was done with unlawful force or violence." The court-martial then recessed for the evening.

During the overnight recess the military judge determined that the members' finding for Charge II, as announced in court, amounted to acquittal since the members excepted two elements of the charge. In court the next day the military judge held that the announcement may have been in error and was "certainly ambiguous." He brought the members back into the courtroom, invoked RULE FOR COURTS-MARTIAL (R.C.M.) 922, MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM) (2016 ed.) and provided them with an instruction that "[a]lthough you indicated a finding of guilty to the Charge itself, by excepting the words you selected and not substituting any language . . . your findings are ambiguous as to the guilt for that specification." He added: "if you only intended to except language without replacing it with other language then the form is correct, but the finding of guilt is not and must be so reflected on the worksheet . . . [if] you did in your earlier deliberations identify a different manner in which you believe a simple assault occurred—and again, without further deliberation—please identify that by substituting that manner on the form."

The members returned to the deliberation room and, after discussing for approximately 20 minutes, returned a revised findings worksheet, and proceeded with a second announcement:

> Under the Sole Specification of Charge II: Not Guilty;
>
> Of the lesser included offense to the Sole Specification of Charge II Simple assault: Guilty, except the words "that on or about 20 June 2017, at or near Okinawa, Japan, the accused attempted or offered to do bodily harm to Sergeant [E.H.]. That the accused did so by touching and holding down Sergeant [E.H.'s] leg with his hands and arms and that the attempt or offer was done with unlawful force or violence," and substituting therefor the words "that on or about 20 June 2017, at or near Okinawa, Japan, the accused offered to do bodily harm to

4

Sergeant [E.H.] and that the accused's acts were intentional and foreseeably caused Sergeant [E.H.] to reasonably believe that force would be immediately applied to her person." Of the excepted words, Not Guilty. Of the substituted words, Guilty.

To Charge II: Guilty.[1]

Additional facts necessary to resolution of the issues are contained in the discussion.

## II. DISCUSSION

### A. The Findings on Charge II and its Specification

Appellant claims that the members' second announcement of their findings for Charge II amounted to an acquittal because it failed to state an offense. We agree.

We review failure to state offense claims de novo. *United States v. Sutton*, 68 M.J. 455, 457 (C.A.A.F. 2010) (citing *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). We reject the Government's contention that Appellant failed to preserve this issue at trial, requiring us to test for plain error. After the members' first findings announcement, the Defense objected both orally and in a written bench brief to permitting the members to render *any* amended findings because their first findings announcement had already:

> . . . clearly found that there was no unlawful force or violence, nor was there any actus reus that actually manifested as an offer or attempt. As such, the only reasonable interpretation of any reviewer is that there are insufficient factual findings to support a conviction and [the Appellant] is not guilty of Charge II.

Appellate Exhibit LIV at 2.

The military judge ruled, "so to the extent that [Appellant's] bench brief is considered a motion, that motion is denied." Therefore, in light of the unique facts of this case, we are presented with the issue of whether the members' second findings announcement (to which the Defense had objected *in toto*) resulted in an acquittal to the allegation of simple assault because the members failed to find the essential element of unlawful force or violence. To require more from the Defense would needlessly elevate form over substance

---

[1] Record at 585-86.

and frustrate modern practice which generally requires only one objection to preserve a point. *Cf.* MILITARY RULE OF EVIDENCE 103(b) (no need to renew evidentiary objection after definitive ruling).

Simple assault requires an attempt or offer to do bodily harm and that said attempt or offer be done with unlawful force or violence. MCM, Pt. IV, ¶ 54; *United States v. Milton*, 46 M.J. 317, 318 (C.A.A.F. 1997); *United States v. Ashford*, No. 200000746, 2002 CCA LEXIS 33, *8 (N-M. Ct. Crim. App. 14 Feb. 2002) (unpub. op.). Unlawful force or violence means that the contact, offer, or attempt was wrongfully caused. *United States v. Bonner*, 70 M.J. 1, 3 (C.A.A.F. 2011).

It appears the members may have intended to find Appellant guilty of an offer type simple assault, a lesser-included offense of the assault consummated by a battery that was charged in the Specification of Charge II. The way the members announced their findings, however, was most unusual. In announcing their findings the second time, the members excepted language that was not contained in the referred specification, but rather was language the military judge used to list the elements of the lesser-included offense in his instructions.[2] Moreover, the language that the members "substituted" constituted an amalgam of the military judge's list of lesser-included offense elements—all of which the members had just "excepted"—and his further instructions describing the mens rea required for a simple assault.[3] Instead of creating a valid specification containing the essential elements of the offense of simple assault, the members merely regurgitated a portion of the military judge's explanation of what an offer-type simple assault is, omitting the essential element of "unlawful force or violence."

The members may have been inadvertently led into this error when the military judge, without objection from the trial or defense counsel, used the same actus reus, to wit: "unlawfully touch and hold down the leg of Sergeant [E.H.] with his hands and arms," as the second element for *both* the charged assault consummated by a battery and its lesser-included offense of simple assault. Using that actus reus in the simple assault elements left the mem-

---

[2] *See* AE XLIV at 4. We note that the members made this same type of mistake when they made their first announcement of findings for Charge II. *See* Record at 569-70.

[3] "For an offer type simple assault, you must be satisfied beyond a reasonable doubt *that the accused's acts were intentional and foreseeably caused Sgt E.H. to reasonably believe that force would immediately be applied to her person.*" AE XLIV, page 4 (italics added).

bers adrift if they did not believe Appellant had unlawfully touched Sergeant E.H.'s leg. It is also unclear why, under the circumstances of this case, the members would only find Appellant guilty of simple assault if they believed that he unlawfully touched her leg.

Members may only except language from specifications, not from instructions. "One or more words or figures may be excepted from a specification and, when necessary, others substituted, if the remaining language of the specification, with or without substitutions, states an offense[.]" R.C.M. 918(a)(1), Discussion. Since the members were using a list of elements, not a properly referred specification, as the basis for their exceptions and substitutions, their action in "excepting" language was clearly improper. Their action in "substituting" language in order to form a lesser-included offense of the actual specification could have been proper if it stated an offense, but we agree with Appellant that it does not.

The Government urges us to invoke the "implied element" doctrine to fill-in the missing element. *See United States v. Smith*, 39 M.J. 448, 452 (C.A.A.F. 1994) (noting challenged guilty finding "must expressly or by fair implication allege an act" constituting the elements of the offense) (citations omitted). We have held that finding the existence of elements in a specification by necessary implication is disfavored. *E.g.*, *United States v. Key*, 71 M.J. 566, 572 (N-M. Ct. Crim. App. 2012) (citing *United States v. Ballan*, 71 M.J. 28, 33-34 (C.A.A.F. 2012)). Application of the doctrine is also confusing. *See United States v. Parker*, 71 M.J. 594, 620 (N-M Ct. Crim. App. 2012) ("given the framework established in *Fosler, Ballan* and *Humphries*, a certain amount of judicial opaqueness still exists as to the limits of the necessarily implied theory"). The requirement that elements be expressly included or necessarily implied in a specification normally serves to ensure that an accused has notice of what to defend against and to protect against double jeopardy. Whatever the doctrine's applicability to findings by exceptions and substitutions may be, it has no bearing on the specifics of this case where the members' findings "eliminated the gravamen of the . . . offense . . .,"[4] *i.e.,* the essential element of unlawful force or violence.

As we have held before, "[a] finding of guilty to the overall charge, but not guilty to one of the elements of the charge through exceptions and substitutions, amounts to a finding of not guilty." *United States v. Joseph*, No. 201300460, 2015 CCA LEXIS 54, *6 (N-M. Ct. Crim. App. 19 Feb. 2015)

---

[4] *See Smith*, 39 M.J. at 452.

(unpub. op.). *See also Smith*, 39 M.J. at 451-453 (if a finder of fact excepts an essential element of a charged offense, we are not at liberty to fill it back in, even if we believe that the evidence presented at trial supports proof of that element).

Accordingly, under the particular facts of this case, we find that the amended findings of guilty to Charge II and its Specification are fatally defective and must be set aside.[5]

## B. Appellant's Conviction of Disorderly Conduct is Legally and Factually Sufficient

We review questions of legal and factual sufficiency de novo. Art 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297-98, (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)).

The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this Court is] convinced of appellant's guilt beyond a reasonable doubt." *Rosario*, 76 M.J. at 117 (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)) (internal quotation marks omitted) (emphasis omitted). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a reasonable

---

[5] While we find, as explained above, that the Appellant preserved his failure to state an offense claim, we would have reached the same result even if we held that Appellant had forfeited his claim and only tested for plain error. "[F]or an appellant to prevail under plain error review, there must be an error, that was clear or obvious, and which prejudiced a substantial right of the accused." *United States v. Coleman*, 79 M.J. 100, 102 (C.A.A.F. 2019) (citation omitted). As noted above, the members failed to find an essential element of the offense at issue, a clear and obvious error. As a result, Appellant stood wrongly convicted of a crime for which he had been duly acquitted. That is clear prejudice to his substantial constitutional and codal rights under any standard of review.

doubt does not mean, however, that the evidence must be free from conflict. *United States v. Goode,* 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001).

In order to sustain Appellant's conviction for a violation of Article 134, UCMJ, as charged in the Specification of Charge III, the Government must have proven beyond a reasonable doubt that: (1) Appellant was disorderly; and, (2) his conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces. 10 U.S.C. § 934 (2006); MCM, Part IV, ¶ 73(b); Charge Sheet.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the Prosecution, we are convinced that a rational fact-finder could have found all the essential elements beyond a reasonable doubt. Additionally, after weighing the evidence and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of Appellant's guilt. Appellant brushed past Sergeant E.H. to enter her room uninvited; asked her to dance with him after removing his shirt; made Sergeant E.H. so concerned for her safety that she felt it necessary to grab a knife and summon the barracks duty officer to come to her immediate assistance; and caused the barracks duty officer, a fellow sergeant, to escort Appellant from Sergeant E.H.'s room. We find this conduct more than sufficient to "affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby." MCM, Part IV, ¶ 73(c)(2).

## C. The Military Judge Did Not Commit Plain Error by Failing to Dismiss Charge III as an Unreasonable Multiplication of Charges

For the first time on appeal, Appellant claims that the military judge erred by not dismissing Charge III due to an unreasonable multiplication of charges. Since Appellant did not object at trial we test the military judge's decision for plain error. *United States v. Harcrow,* 66 M.J. 154, 156 (C.A.A.F. 2008). Appellant has the burden of establishing error that is clear or obvious and that results in material prejudice to his substantial rights. *United States v. Akbar,* 74 M.J. 364, 392-93 (C.A.A.F. 2015).

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We consider five non-exclusive factors to determine whether there was an unreasonable multiplication of charges: (1) whether Appellant objected at trial; (2) whether each charge and specification was aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresented or exaggerated Appellant's criminality; (4) whether the number of charges and specifications unreasonably increased Appellant's punitive exposure; and (5) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges. *United States v. Quiroz,* 55 M.J. 334,

338-39 (C.A.A.F. 2001). No one particular factor is a necessary prerequisite. Instead, these factors are weighed together, and "one or more . . . may be sufficiently compelling[.]" *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F 2012); *see United States v. Forrester*, 76 M.J. 389, 394-95 (C.A.A.F. 2017).

The first factor clearly weighs against Appellant—he failed to object at trial. The second factor is more difficult to analyze since the members excepted all the language from the Dereliction of Duty specification that specifically described the actions the Government alleged constituted the dereliction. Notwithstanding the uncertainty over exactly what acts the members found constituted dereliction, we find it sufficient that Appellant's general conduct in taking his duty break in Sergeant E.H.'s barracks room after lying to the barracks duty officers about the unit to which he belonged is a distinctly separate act from his behavior inside Sergeant E.H.'s room that constituted disorderly conduct. The third factor also weighs against Appellant since we do not find that the charges exaggerate Appellant's criminality, but merely cover the breadth of his behavior in this incident. The fourth factor weighs against Appellant since Charge III only added four months to his maximum punishment. Additionally, there could have been no prejudice from this factor since the members did not adjudge any confinement. Finally, we see no evidence of prosecutorial overreach or abuse in referring these three charges and specifications against Appellant.

## D. Sentence Reassessment

Having set aside the findings of guilty to Charge II and its Specification, we must now determine if we are able to reassess the Appellant's sentence. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity[.]" *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). A reassessed sentence must not only "be purged of prejudicial error [but] also must be 'appropriate' for the offense[s] involved." *Id.*

In determining whether to reassess a sentence or to order a sentencing rehearing, we consider the five factors espoused in our superior court's holding in *Winckelmann*: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15-16.

Under the circumstances of this case, we do not feel it is appropriate for us to reassess Appellant's sentence. The penalty landscape has changed in an uncertain way. Although the simple assault conviction that we set aside did not, per se, authorize a bad-conduct discharge, we cannot know how much the assault affected the members' sentence determination—especially since the remaining offenses were relatively minor offenses which often do not result in punitive discharges. The convening authority is authorized to order a rehearing on sentence.

## E. Errors in the Convening Authority's Action

The convening authority's action contains two errors. First, it fails to indicate that Appellant was arraigned on a charge and specification alleging a violation of Article 107, UCMJ, that was subsequently withdrawn and dismissed. The remaining charges were then renumbered. Second, it recites the members' first announced findings to Charge II and its Specification rather than their subsequent clarified findings.

A court-martial promulgating order must contain "a summary of all charges and specifications on which the appellant was arraigned" and "the findings or disposition of all charges and specifications on which the appellant was arraigned." R.C.M. 1114(c)(1).

The failure to reflect accurate information in the promulgating order was error; however, the error was harmless as it did not materially prejudice the Appellant's substantial rights. To ensure the Appellant has an official record which accurately reflects his proceedings, we order that the supplemental promulgating order reflect the correct information.

## III. CONCLUSION

After careful consideration of the record, the parties' briefs , and oral argument, the findings of guilty to Charge II and its Specification are **SET ASIDE** and **DISMISSED WITH PREJUDICE**. The sentence is **SET ASIDE**. The remaining findings are correct in law and fact. Arts. 59 and 66, UCMJ. The convening authority may order a rehearing on sentence or approve a sentence of no punishment. *United States v. Clark*, 62 M.J. 195, 201 (C.A.A.F. 2005).

The new convening authority's action shall indicate that Appellant was arraigned on four charges and specifications and that the original Charge II was withdrawn and dismissed and the remaining charges were renumbered. It shall also correctly reflect the findings to all charges and specifications including that renumbered Charge II and its Specification were dismissed with prejudice.

Senior Judge KING and Judge ATTANASIO concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court