# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, KRAUSS, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major RODNEY H. LIPSCOMB**
**United States Army, Appellant**

ARMY 20120829

Headquarters, U.S. Army Africa/Southern European Task Force
Christopher Fredrikson, Military Judge (arraignment)
Joshua Shuey, Military Judge (pretrial motions hearing)
Reynold Masterton, Military Judge (pretrial motions hearing and trial)
Colonel Mark D. Tellitocci, Staff Judge Advocate

For Appellant: Captain Brian J. Sullivan, JA; David A. Wagner, Esquire (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major John K. Choike, JA; Major Matthew T. Grady, JA (on brief).

15 June 2015

---------------------------------
MEMORANDUM OPINION
---------------------------------

COOK, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of violating a lawful general regulation and conduct unbecoming an officer and a gentleman, in violation of Articles 92 and 133, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 892, 933 (2006).  A panel of officer members sitting as a general court-martial convicted appellant, contrary to his pleas, of maltreatment of a subordinate, abusive sexual contact (two specifications), and forcible sodomy, in violation of Articles 93, 120, and 125, UCMJ, 10 U.S.C. §§ 893, 920, 925 (2006 & Supp. IV 2011).[1]  The panel sentenced appellant to a dismissal and confinement for one year.  The convening authority approved the adjudged sentence.

---

[1] The panel acquitted appellant of two specifications of wrongful sexual contact.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ.  Appellant raises three assignments of error, one of which merits discussion but no relief.  Appellant personally raises four issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), two of which merit discussion and relief.

## BACKGROUND

Appellant's case revolves around an illicit relationship he initiated with a junior enlisted female soldier in his unit, Private First Class (PFC) AC.  Appellant and PFC AC were assigned to the 173rd Airborne Brigade Combat Team (ABCT), in Vicenza, Italy.  Appellant, a major, was the officer in charge of his brigade's communication section (S-6), which was composed of various officers, warrant officers, noncommissioned officers (NCOs), and enlisted soldiers.  Private First Class AC was an IT specialist assigned to the S-6 section.

In early December 2011, soldiers from the 173rd ABCT, including members of the S-6 section, were scheduled to participate in a training event in Bamberg, Germany.  Some of these soldiers arrived in Germany approximately one week earlier for a separate exercise at a different location.  Appellant, PFC AC, and a few others traveled directly to Bamberg from Vicenza via ground transportation on 5 December 2011.  However, while a number of the soldiers traveled in a 12-passenger van from the unit motor pool, PFC AC and appellant drove separately in a vehicle he had rented for the two of them.  Additionally, appellant made lodging accommodations for him and PFC AC, securing two rooms at the Hotel National, a local hotel in Bamberg.[2]

Once appellant and PFC AC arrived at the Hotel National, they checked into their respective rooms, and shortly thereafter appellant knocked on PFC AC's door and they departed the hotel.  Appellant and PFC AC walked downtown to a Christmas market, where they browsed and shopped, and appellant purchased a glass of alcoholic gluhwein for PFC AC.  Next, the two had dinner and drinks at a local restaurant, during which appellant asked PFC AC to refer to him by "Rod," his first name.  This proposal made PFC AC uncomfortable and she told appellant she would continue calling him "Sir."  After another stop at a bar for another drink, the evening went from bad to worse.

As they exited the bar, appellant began making inappropriate and unsolicited physical advances towards PFC AC.  Following PFC AC's protestations, appellant stopped, instead taking her to a nearby adult novelty store.  Inside, appellant

---

[2] Testimony from several witnesses established that soldiers from the 173rd ABCT participating in the Bamberg training stayed in various hotels in the area due to limited availability of temporary on-post lodging.

engaged in a sexually charged discussion with PFC AC. At this point, PFC AC informed appellant she wanted to return to the hotel, but he insisted that they proceed to an Irish pub. There, PFC AC used the restroom, and when she returned, appellant had purchased a beer for her. Appellant became more "flirtatious" with PFC AC, and she testified that he attempted to kiss her "five to ten" times. At some point at the Irish pub, appellant and PFC AC encountered two other soldiers from a local unit, and appellant introduced PFC AC as "Captain AC," which made her "feel like she was doing something wrong."

Upon leaving the Irish pub, appellant and PFC AC began walking back to the Hotel National. Appellant stopped on a bridge and kissed PFC AC and she testified that she kissed him back because "we [were] really alone now and if I don't show interest in [appellant], even a little bit, maybe I will get hurt worse." She further explained she believed she had no choice but to engage in the activity because "he was a major and I [was] a PFC." After their stop on the bridge, they resumed their walk back to the hotel, and appellant continued making physical advances towards PFC AC while she persisted in rebuffing his overtures.

When they reached their hotel, PFC AC immediately proceeded to her room while appellant retrieved a key for his room from the reception desk. However, PFC AC had trouble unlocking the door, and before she could enter her room, appellant approached her and asked that she join him in his room. PFC AC told him "no" but appellant "grabbed [her] hand and kind of escorted [her] to his room." When they entered his room, appellant "pushed" her against the wall and began kissing her. Private AC testified that once again she kissed appellant back, but only in order to appease him. Appellant next sat PFC AC on his bed and briefly went into the bathroom before returning in a t-shirt and boxers with a visible erection. PFC AC did not initially leave because she was afraid appellant would become "really violent." When she told appellant she was going to return to her room, PFC AC testified he told her "No, if you leave, I know you're not going to come back."

PFC AC did leave, but appellant followed her back to her room and, once inside, he obstructed her path to the bathroom, whereupon PFC AC began to change her clothes "in a really inconspicuous way," facing away from appellant. Nonetheless, appellant made sexual comments about PFC AC's body. After PFC AC finished dressing, she climbed into her bed, and told appellant, "I'm going to bed now." Undeterred, appellant once again insisted that PFC AC return to his room. PFC AC testified that she agreed to return to appellant's room because she "didn't want him in her room" and also because she felt she had no other choice because "he was a Major and he was my boss. He is the one I have to listen to."

PFC AC testified that once she and appellant returned to his room, "he lay me on the bed and [got] on top of me" and she could feel appellant's erect penis pressed against her side. Appellant began kissing PFC AC on her mouth, breasts, and neck,

and then lifted her shirt and began kissing and fondling her breasts. Throughout this portion of the ordeal, PFC AC "was telling [appellant] 'stop, no, we shouldn't be doing this.'" Next, PFC AC "felt pressure in [her] vagina, like he was using his fingers." PFC AC "clinched up and after a few seconds [appellant] stopped." Appellant then began kissing her body, moving from PFC AC's neck to her breasts and her vagina. PFC AC was "almost positive" appellant's tongue penetrated her vulva and testified that when appellant subsequently kissed her mouth, she could taste secretions from her vagina. When appellant was "about to pull his penis out," PFC AC pushed him away and said "Sir, I don't want to have sex with you." Appellant promptly stopped and PFC AC "immediately got up and ran to [her] room."

Over the next two days, while still in Germany, PFC AC shared limited details of the incident with a few other soldiers and NCOs from her unit. After refusing to travel with appellant back to Italy, PFC AC returned to Vicenza with an NCO. Shortly after her return to Italy, PFC AC made an unrestricted report of the incident to a victim advocate, which triggered an investigation by the Criminal Investigative Command (CID).

Ultimately, for the events that occurred in appellant's hotel room, appellant was convicted of two specifications of abusive sexual contact for engaging in sexual contact with PFC AC "by placing her in fear of abuse of military position, rank, and authority," and "by causing bodily harm to her." Moreover, appellant was convicted of one specification of forcible sodomy against PFC AC.

Pursuant to his plea, appellant was also convicted of violating Article 92, UCMJ, for disobeying a lawful general regulation by engaging in a prohibited relationship with PFC AC on 5 December 2011. Further, appellant was convicted by exceptions and substitutions, of maltreating a subordinate in violation of Article 93, UCMJ, for subjecting PFC AC to inappropriate conduct that evening. Finally, appellant was convicted by exceptions and substitutions of conduct unbecoming an officer and a gentleman for various actions on 5 December 2011, to include accompanying PFC AC into a store selling sex toys, consuming alcohol with her, asking PFC AC if she engaged in anal sex, entering her hotel room, and observing her change her clothes, and for touching PFC AC's genitalia.[3]

Following appellant's trial, he submitted clemency matters pursuant to Rule for Courts-Martial 1105, among which was a memorandum from MAJ KTA, a panel member in appellant's court martial. In her letter, MAJ KTA alleged, *inter alia*, that:

---

[3] Appellant pleaded guilty by exceptions and substitutions, and was convicted of this specification by further exceptions and substitutions by the panel. (*see* footnote 5 below).

> Although the panel members were given instructions by the Judge to disregard any outside or similarly publicized cases, I believe the senior members of the panel did not hold to these instructions. I believe that the senior members of the panel took into consideration the cases with more evidence [sic] to support allegations resulting in lesser (or no punishments [sic]) for other high ranking Army Officers, and became concerned with making an example of MAJ Lipscomb, despite the evidence presented.

## LAW AND DISCUSSION

### 1. Unreasonable Multiplication of Charges

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001); *see also United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). In *Quiroz*, our superior court listed five factors to guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. 338-39 (internal quotation marks and citation omitted).

### a. Abusive Sexual Contact by Bodily Harm and Fear of Abuse

Appellant stands convicted of two specifications of abusive sexual contact for the identical transaction—his touching of PFC AC's vagina that occurred in his Hotel National room on 5 December 2011. The only distinction was the means by which appellant accomplished the sexual contact. Specification 1 of Charge I alleged that appellant accomplished the act "by placing [PFC AC] in fear of abuse of military position, rank, and authority." Specification 2 of Charge I alleged the act was accomplished "by causing bodily harm" to PFC AC.

During an Article 39(a), UCMJ, hearing following the close of evidence, defense counsel requested that the military judge instruct the panel that "they can't find [appellant] guilty of both . . . . He either did it by placing [PFC AC] in fear of abuse of military position, rank, and authority, or he did it by causing bodily harm . . . ." The government responded that "it *could* be both modalities, both the fear and the fact that he used bodily harm to achieve . . . the act." (emphasis added). The military judge "agree[d] with the government" but explained that if the panel did "come back with guilty findings on either or either lesser included offense . . . my plan then is to merge those two, at the very least, for sentencing purposes."

In his sentencing instructions to the panel, the military judge informed the members that "[t]he lesser included offenses of specifications 1 and 2 of Charge I, abusive sexual contact and the Specification of Charge II, forcible sodomy those are one offense for sentencing purposes, so you've got to consider those all as a single offense."

Here, there is no evidence of prosecutorial overreach, nor an unreasonable increase in appellant's punitive exposure. The government provided an articulate explanation of how and why each offense was charged, and prior to findings, it could not be certain of whether the panel would return convictions for one, both, or neither sexual assault/abuse offense. Additionally, because the military judge merged the abusive sexual contact offenses for sentencing, his punitive exposure was not affected. Nonetheless, the first three *Quiroz* factors all weigh heavily in appellant's favor. Trial defense counsel objected to the separate specifications at trial, each abusive sexual contact offense is aimed at the same transaction and misconduct, and ultimately, appellant's convictions for both clearly exaggerate his criminality. Therefore, we will set aside and dismiss appellant's conviction for abusive sexual contact of PFC AC "by placing her in fear of abuse of military position, rank, and authority."

### b. Disobedience, Maltreatment, and Conduct Unbecoming

Appellant pleaded guilty to and was convicted of violating a lawful general regulation—Army Regulation 600-20—by wrongfully engaging in a prohibited

relationship with [PFC AC]." Appellant was also convicted, contrary to his pleas, by exceptions and substitutions, of maltreatment of a subordinate, PFC AC.[4] Finally, appellant pleaded guilty to and was convicted of engaging in conduct unbecoming an officer and gentleman.[5]

Here, the Article 92, UCMJ, disobedience offense, the Article 93 maltreatment offense, and the Article 133 conduct unbecoming an officer offense are all aimed at the same misconduct—appellant's engagement in an inappropriate and illicit relationship with a junior enlisted soldier that worked for him. The Article 92 charge sought to punish appellant for violating a regulation prohibiting the same conduct—inappropriate relationships between soldiers of different ranks—for which he was convicted under Article 93. "Congress never intended this multiplication of [Article 92 and 93] offenses." *United States v. Curry*, 28 M.J. 419, 424 (C.M.A. 1989). Moreover, the Article 133 charge encompasses both the Article 92 and 93 offenses.

Thus, we find the second *Quiroz* factor standing on its own is enough to conclude that these three offenses represent an unreasonable multiplication of charges. *See United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (noting one or more factors may be sufficiently compelling, without more, to warrant relief). Accordingly, we will dismiss the specific disobedience offense and maltreatment offense as an unreasonable multiplication of charges with the broader conduct addressed by the conduct unbecoming an officer offense. *See United States v. Frelix-Vann*, 55 M.J. 329 (C.A.A.F. 2001).

---

[4] The panel found appellant guilty, by exceptions and substitutions, of "maltreat[ing] PFC AC, a person subject to his orders, by sexually harassing her by accompanying her into a store specializing in selling sexual toys and sexual videos; asking her if she ever engaged in anal sex . . . ; discuss[ing] with her the method by which [appellant] had previously experienced anal sex . . . ; telling her she had a nice body . . . ; and touching her genitalia."

[5] Following appellant's guilty plea, by exceptions and substitutions, to this offense, the panel convicted him by additional exceptions and substitutions of "consum[ing] alcohol with a subordinate soldier; accompany[ing] her into a store specializing in selling sexual toys and sexual videos; ask[ing] her if she ever engaged in anal sex . . . ; enter[ing] the hotel room of an enlisted soldier and watch[ing] as she changed her clothes; tell[ing] her she had a nice body . . . ; and touch[ing] her genitalia; and that under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman."

## 2. *Improper Considerations by the Panel*

In his final assignment of error, appellant claims that "[t]he members committed misconduct when they considered and discussed other sexual assault cases involving officers where there was a perception that justice[e] was not done." Specifically, appellant alleges that in MAJ KTA's letter, she "*clearly states* that the more senior members violated the military judge's instructions by discussing other sexual assault cases involving officers where there was a perception that justice was not done and the officers were treated too leniently." (emphasis added).

Appellant urges this court to pierce the deliberative process of the panel. We decline to do so. Military Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith . . . .

Nonetheless, "there are three circumstances that justify piercing the otherwise inviolate deliberative process to impeach a verdict or sentence: (1) when extraneous information has been improperly brought to the attention of the court members; (2) when outside influence has been brought to bear on a member; and (3) when unlawful command influence has occurred." *United States v. Dugan*, 58 M.J. 253, 257 (C.A.A.F. 2003) (quoting *United States v. Accordino*, 20 M.J. 102, 104 (C.M.A. 1985).

Here, contrary to appellant's assertion, MAJ KTA's letter is anything but "clear" with respect to her concerns that panel members may have considered other courts-martial and their results when determining appellant's sentence. In fact, in her brief letter, MAJ KTA qualified each of her allegations with "*I believe*" rather than a definitive assertion. In addition, MAJ KTA offered no details or specificity in support of her claims of inappropriate considerations by the panel.[6] We therefore find there is insufficient reason to believe that extraneous information was improperly brought to the attention of the panel.

Assuming arguendo that MAJ KTA's letter does provide adequate factual detail to prompt further analysis, her allegations do not amount to improper outside influence or unlawful command influence. *See Dugan*, 58 M.J. at 257-58. Further,

---

[6] Appellant has offered no additional support of MAJ KTA's claims in his pleadings before this court.

"the general and common knowledge a court member brings to deliberations is an intrinsic part of the deliberative process and evidence about that knowledge is not competent to impeach the members findings or sentence." *United States v. Straight*, 42 M.J. 244, 250 (C.A.A.F. 1995). Appellant has offered no evidence that panel members possessed "personal knowledge regarding the parties or the issues involved in the litigation that might affect the verdict." *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). Faced with little more than bare speculation, we will refrain from taking the extraordinary step of piercing the panel's deliberative process.

**CONCLUSION**

The finding of guilty to Specification 1 of Charge I is set aside and that specification is DISMISSED. Furthermore, findings of guilty to Charge III and its Specification and Charge IV and its Specification are set aside, and those charges and specifications are DISMISSED.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. Appellant faced a maximum sentence of confinement for life without parole following his convictions at trial, and appellant is still exposed to life without parole following the relief provided in the above paragraph. In fact, the convictions we have set aside contributed only two distinct years of confinement, as the military judge merged Specifications 1 and 2 of Charge I and Charge II for sentencing and also merged the disobedience offense and conduct unbecoming an officer offense for sentencing. Second, the gravamen of appellant's misconduct, a nonconsensual and abusive sexual encounter with an enlisted soldier, remains. Based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Judge KRAUSS and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court