UNITED STATES, Appellee

v.

Keith A. STRAIGHT, Data Systems
Technician Second Class, U.S.
Navy, Appellant.

No. 94–0060.
CMR No. 89–4072.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 11, 1995.

Decided Aug. 1, 1995.

For Appellant: *Captain J.F. Havranek,* USMC (argued); *Lieutenant L.M. Higdon,* JAGC, USNR (on brief).

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess,* USMC, and *Commander S.A. Stallings,* JAGC, USN (on brief); *Colonel J. Composto,* USMC.

*Opinion of the Court*

GIERKE, Judge:

1. A general court-martial convicted appellant, contrary to his pleas, of attempted murder, violating a lawful general regulation [1], rape, wrongful appropriation of an automobile, forcible sodomy (4 specifications), assault and battery, kidnapping, indecent as-

1. Charge II originally contained three specifications, two of which were withdrawn prior to pleas. (R. 17.)

sault (2 specifications), and communicating a threat, in violation of Articles 80, 92, 120, 121, 125, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 892, 920, 921, 925, 928, and 934, respectively. The court-martial sentenced him to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority reduced the confinement to 13 years and approved the remainder of the adjudged sentence.

2. The Court of Military Review[2] affirmed the findings, except for reducing each specification of forcible sodomy to the lesser-included offense of consensual sodomy and each specification of indecent assault to the lesser-included offense of committing indecent acts. Based on the affirmed findings, the court below reassessed and affirmed the approved sentence.

3. This Court granted review of the following issues:

I

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW CONFLICTED WITH THE SUPREME COURT'S HOLDING IN *COKER v. GEORGIA,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) BY SUMMARILY AFFIRMING THE CAPITAL REFERRAL OF APPELLANT'S CASE FOR THE RAPE OF AN ADULT WOMAN.

II

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW'S SUMMARY HOLDING ON THE EXTRINSIC EVIDENCE CONSIDERED BY THE MEMBERS CONFLICTED WITH *UNITED STATES v. WALLACE,* 28 MJ 640 (AFCMR 1989).

III

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED BY SUMMARILY HOLDING THAT TRIAL DEFENSE COUNSEL'S FAILURE TO RESEARCH THE RULES OF RECONSIDERATION DID NOT DENY APPELLANT HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

We resolve all three issues against appellant and hold that the Court of Military Review did not err.[3]

*Factual Background*

4. Data Systems Technician Third Class (DS3) B intended to terminate her romantic relationship with appellant after Labor Day of 1988. After appellant attempted suicide and was hospitalized, he was ordered to stay away from DS3 B.

5. On Saturday, October 1, 1988, appellant abducted DS3 B from her duty station at knife point, handcuffed her, tied her feet, forced her to sit on the floor of an automobile which appellant had taken without permission of the owner, and transported her to a motel.

6. At the motel appellant handcuffed and tied B to the bed, taped her mouth shut, and left the room to obtain food. B testified that when appellant returned, he forced her to sit in the shower while he showered. He then forced her to perform fellatio, after which he raped her and anally sodomized her. The court-martial convicted appellant of forcible sodomy, but the Court of Military Review affirmed only consensual sodomy because of an instructional error. Unpub. op. at 3–4.

7. B testified that she began screaming. When appellant held a knife to her throat and threatened to cut her, she then "screamed into the pillow."

8. Appellant then shaved B's pubic area with a razor. She fell asleep for a short time and was awakened by appellant, who was "doing oral sex" with her. B testified that appellant then made her place her mouth on his anus.

---

**2.** *See* 41 MJ 213, 229 n. * (1994).

**3.** *See* 41 MJ 340 n. 2 (1995) for disposition of

Issue IV (39 MJ 375).

9. The next morning, appellant and B left the motel, with B lying on the floor of the automobile. B testified that appellant took her into some woods and forced her at knife point to perform fellatio on him and masturbate herself.

10. After they went to a second motel, appellant again handcuffed B, tied her to the bed and taped her mouth. He cut B's wrists with a razor, cut his own wrist, then "laid across" her and told her that if he could not have her, no one could. As her right wrist began spurting blood, appellant got up, started to walk, and fell. When he got up again, he made two telephone calls to his supervisor and two to B's roommate. Appellant told his supervisor that he had cut B's wrist, and he asked him if he should stop the bleeding. Appellant then bandaged B's wounds with a torn up towel.

11. Appellant's supervisor notified the civilian police and his department head. Eventually the police and paramedics came to the motel. B was taken to a hospital where she was treated.

12. Appellant denied abducting B at knife point. He admitted grabbing her around the waist and holding his hand over her mouth. He admitted handcuffing her in the car and in the motel room so that she could not leave. He testified that he removed the handcuffs while he was in the motel room. Finally, he testified that all of the sexual acts were consensual. He admitted cutting B's wrists and his own, intending to kill her and himself.

*Capital Referral* (Issue I)

13. Appellant's case was referred as capital. In *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the Supreme Court held, in a plurality decision, that a death sentence for rape was cruel and unusual punishment under the Eighth Amendment. RCM 1004(c)(9)(B), Manual for Courts–Martial, United States, 1984, authorizes a death sentence for rape if the "accused maimed or attempted to kill the victim." RCM 1004(c)(9)(B) was drafted in an effort to accommodate *Coker v. Georgia*, *supra*. Drafters' Analysis of RCM 1004(c)(9), Manual, *supra* at A21–72 (1994 ed.).

14. Under RCM 1004(b)(1), the prosecution notified the defense that it intended to rely on the attempted murder as the aggravating factor authorizing a death sentence. (App. Ex. I.) Because the finding of guilty of rape was not unanimous, the death sentence was not authorized or considered by the court-martial. *See* RCM 1004(a)(2); para. 45e, Part IV, Manual, *supra*.

15. After arraignment, defense counsel challenged the capital referral as an abuse of discretion but did not raise any constitutional issues. Although the prosecution cited *Coker v. Georgia*, *supra*, in its brief on the motion, neither side orally argued the *Coker* issue, and the military judge did not rule on the constitutionality of the capital referral.

16. Assuming *arguendo* that RCM 1004(c)(9) is unconstitutional, the Eighth Amendment would be violated only if the death penalty had been imposed. Appellant argues, however, that he was prejudiced by the capital referral because he was prevented from pleading guilty and was unable to negotiate a pretrial agreement for "anything more than a non-capital referral." Final Brief at 7.

17. To the extent that the referral as capital may have violated the Eighth Amendment, the error was waived by failure to raise the constitutional issue. RCM 905(b)(1) and (e). *See United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (error "forfeited" if not "timely" raised). We are satisfied that any defect in the referral does not rise to the level of plain error. Although appellant asserts that he was deprived of the opportunity to negotiate a pretrial agreement in return for a plea of guilty, he had no constitutional right to plead guilty. *United States v. Matthews*, 16 MJ 354, 362–63 (CMA 1983). There is also no right to a pretrial agreement. *See* RCM 705(d)(3). Furthermore, he was free to offer a guilty plea in return for a non-capital referral, and in fact did make an offer, which was rejected.

■ 18. We note that the capital referral prevented appellant from requesting a bench trial. *See* Art. 18, UCMJ, 10 USC § 818. Appellant did not assert at trial, before the Court of Military Review, or before this Court that he would have requested a bench trial if permitted to do so. To the contrary, a "declaration" from trial defense counsel, submitted to this Court in support of an allegation that the capital referral was prosecutorial misconduct, asserts that the military judge was "notorious for awarding extremely harsh sentences." Under those circumstances, the likelihood of appellant's requesting a bench trial was virtually nil.

■ 19. In light of the foregoing, we need not reach the constitutional question in this case, because the death penalty was not imposed, any defects in the referral were waived, and, in any event, they do not rise to the level of plain error. We hold that the Court of Military Review did not err by refusing to invalidate the referral of appellant's case.[4]

*Deliberations of the Court Members* (Issue II)

20. In a post-trial "declaration,"[5] trial defense counsel makes this assertion:

Following the completion of DS2 Straight's court-martial in 1989, I spoke with several of the members regarding the trial. One of the members explained that the members had initially determined that five years of confinement, combined with a Dishonorable Discharge, was appropriate for the offenses. However, prior to announcing the sentence in court, one of the members informed the panel that it was his understanding that DS2 Straight would only serve one-third of his sentence due to the likelihood of parol [sic]. As a result, the members tripled the confinement time to ensure that DS2 Straight would serve at least five years in prison.

One member had wanted to give DS2 Straight 100 years of confinement and had refused to join with the remaining members in the 15 year sentence. It was my understanding that three members were satisfied with a smaller period of confinement, I had asked for 2 to 7 years. One member, in essence, controlled the sentencing. I did not know, nor do I know today, the identity of that member.

21. Appellant also submitted a declaration from a court member, who recalled "the possibility of early parole being mentioned in passing by another member." The member did "not recall it being discussed at any length by the members as a specific consideration in determining the amount of confinement to award." The member did "not recall considering" parole in his own determination of an appropriate sentence.

22. Based on these declarations, appellant requests this Court to approve a sentence limiting confinement to 5 years or to order a rehearing on sentence. Final Brief at 13.

■ 23. As a threshold matter, this Court must answer the question whether the declarations are admissible under Mil. R.Evid. 606(b), Manual, *supra. See United States v. Loving*, 41 MJ 213, 234–39 ¶¶ 10–18

---

4. We note that appellant complains that the Court of Military Review "summarily" affirmed the capital referral. Final Brief at 3, 4. To the extent that appellant intended to assert as error the failure of the court below to articulate reasons for its decision, we hold that the court below did not err by "summarily" affirming the capital referral. A Court of Military Review is not required to specifically write on each assignment of error. *United States v. Clifton*, 35 MJ 79, 81–82 (CMA 1992); *United States v. Matias*, 25 MJ 356, 361 (CMA 1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988).

5. The declarations cite and are prepared in accordance with 28 USC § 1746, which provides:

"Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same...., such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: [samples omitted]."

(1994); *United States v. Maree,* 934 F.2d 196, 201 (9th Cir.1991) (admissibility of juror's statements is a threshold question). This Court begins with the proposition that it may not consider any information obtained from the members about their deliberations unless the information fits within one of the exceptions to Mil.R.Evid. 606(b).

24. That rule provides:

"[A] member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith...."

There are three exceptions stated in the rule:

[A] member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence.

Mil.R.Evid. 606(b) is taken from Fed.R.Evid. 606(b). The two are identical except for the additional reference to unlawful command influence in Mil.R.Evid. 606(b). Drafters' Analysis, Manual, *supra* at A22–41 (1994 ed.). *See United States v. Loving,* 41 MJ at 235 ¶ 11.

■ 25. Appellant argues that the mention of parole was "extraneous prejudicial information." He cites *United States v. Wallace,* 28 MJ 640 (AFCMR 1989), in support of his argument. Final Brief at 10–11. In *Wallace* the Court of Military Review held that the court members' consideration of information regarding post-trial upgrading of a bad-conduct discharge was extraneous prejudicial information. The Government argues that *Wallace* "was wrongly decided" and that an erroneous notion of law regarding parole eligibility does not constitute extraneous prejudicial information. Answer to Final Brief at 14. We hold that the members' statements regarding parole do not constitute extraneous prejudicial information or outside influence.

■ 26. Federal courts distinguish between extrinsic influences on jurors and intrinsic influences. *United States v. Bassler,* 651 F.2d 600, 602 (8th Cir.), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 254 (1981) and 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982); *see United States v. Webster,* 750 F.2d 307, 338 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 2341, 85 L.Ed.2d 855, 856 (1985). Because Fed.R.Evid. 606(b) precludes inquiry into the subjective effects of extrinsic influences on jurors, the courts apply a presumption of prejudice from extrinsic influences. The burden is on the Government to rebut the presumption. *United States v. Bassler,* 651 F.2d at 603; *accord United States v. Perkins,* 748 F.2d 1519, 1533 (11th Cir.1984).

27. In *Silagy v. Peters,* 905 F.2d 986 (7th Cir.1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), the defendant, Silagy, argued that his death sentence could not stand because of a juror's statements "about his understanding of Illinois sentencing procedures." During deliberations, the juror told other jurors that a life sentence would result in Silagy's serving no more than 5 to 7 years' confinement. He also told the other jurors that Silagy would not be executed if sentenced to death but that the defendant would spend more than 7 years in prison. 905 F.2d at 1008. The court affirmed the district court's exclusion of this proffered evidence under Fed.R.Evid. 606(b). Noting the underlying policy reasons for Fed.R.Evid. 606(b), the court said that "this court 'will not inquire into the jury's deliberative process, including arguments, *statements, discussions,* mental and emotional reactions, and votes, in the absence of a claim of external influence.'" 905 F.2d at 1009, *quoting United States v. Ford,* 840 F.2d 460, 465 (7th Cir.1988). *See United States v. Combs,* 41 MJ 400, 401 (1995) (court member's statement that "sentence would have been 'considerably less' if he had cooperated with" the police is not competent evidence to impeach sentence); *United States v. Loving,* 41 MJ at 234–39 ¶¶ 10–18 (court

member's affidavits concerning what voting procedures were followed may not be considered); *United States v. Motsinger*, 34 MJ 255, 257 (CMA 1992) (letter from court-martial president concerning reasons for imposing bad-conduct discharge "may not be considered"); *Fulghum v. Ford*, 850 F.2d 1529, 1535 (11th Cir.1988), *cert. denied*, 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989) ("offer of proof that two of twelve jurors had stated that" they found defendant guilty "because they feared a verdict of not guilty by [reason of] insanity would have been less effective in assuring" defendant's "removal from society" did not fit into an exception of Fed.R.Evid. 606(b)); *Bloom v. Vasquez*, 840 F.Supp. 1362, 1377 and n. 24 (C.D.Cal.1993) (evidence of jury's discussions of parole during the penalty phase deliberations of a capital case excluded by Fed.R.Evid. 606(b) because they were internal to deliberations and did not "involve information imparted by a third party or obtained through an outside reference").

■ 28. Our review of the case law interpreting Fed.R.Evid. 606(b) and Mil.R.Evid. 606(b) leads us to two conclusions: First, evidence of information acquired by a court member during deliberations from a third party or from outside reference materials may be extraneous prejudicial information which is admissible under Mil.R.Evid. 606(b) to impeach the findings or sentence. Second, the general and common knowledge a court member brings to deliberations is an intrinsic part of the deliberative process, and evidence about that knowledge is not competent evidence to impeach the members' findings or sentence. *See United States v. Caro–Quintero*,[6] 769 F.Supp. 1564, 1577 n. 7 (C.D.Cal.1991), *aff'd sub nom. United States v. Bernabe–Ramirez*, 42 F.3d 1403 (9th Cir. 1994). A contrary result would undercut the policy behind Mil.R.Evid. 606(b) "of promoting finality in litigation and of protecting the members from harassment and second-guessing." *See* S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 633 (3d ed. 1991).

■ 29. There may be instances in which a court member's personal knowledge may constitute extraneous prejudicial information, as where the member has "personal knowledge regarding the parties or the issues involved in the litigation." *See United States v. Navarro–Garcia*, 926 F.2d 818, 821 (9th Cir.1991). No such specific knowledge is shown by the declarations in this case.

■ 30. Here, neither trial defense counsel's declaration nor the court member's declaration raises anything other than internal matters regarding the deliberations of the members of the court-martial on sentence. At most, the declarations show that one or more members drew on generalized common knowledge based on their experience, training, and schooling as military officers. Lay opinions about the possibility of parole, made as expressions of opinion or common knowledge, do not fall within the exceptions to Mil.R.Evid. 606(b). *See Monroe v. Collins*, 951 F.2d 49, 53 (5th Cir.1992). We need not decide if the result would be different had a member purported to speak authoritatively as an expert on parole law, because that issue is not raised by the declarations and thus is not before us. Since the declarations presented by appellant are not competent evidence under Mil.R.Evid. 606(b), appellant's allegation of error fails.

■ 31. We note that both trial defense counsel's declaration and the court member's declaration disclose the votes and the impact of parole on the vote. Fed.R.Evid. 606(b) is interpreted as precluding inquiry into the subjective effects of any extrinsic material or influence. *See United States v. Sababu*, 891 F.2d 1308, 1334 (7th Cir.1989) ("Rule 606(b) is a proscription against *post*-verdict questioning [of] jurors directly about the effect of outside contact on their deliberations."); *United States ex rel. Buckhana v. Lane*, 787 F.2d 230, 238 (7th Cir.1986) (Rule 606(b) "prohibits jurors from giving post-verdict testimony as to whether their deliberations, in fact, were prejudiced by the extraneous information or outside influence."). Prejudice in such cases is presumed to avoid inquiry into the thought processes of individual

---

**6.** Caro–Quintero was NOT involved in the partic- ular matter before the Court.

members. *See United States v. Bassler*, 651 F.2d at 603. We caution counsel and court members to be mindful of the obligation to protect the secrecy of deliberations. Even when the exceptions to Mil.R.Evid. 606(b) are triggered, disclosures should be limited to the fact and nature of the extrinsic evidence; the impact of the extrinsic evidence or influence on the deliberations or voting should not be disclosed.

*Ineffective Assistance of Counsel* (Issue III)

32. After learning that the court members may have discussed parole eligibility during their sentencing deliberations, defense counsel did not ask the military judge to convene a session under Article 39(a), UCMJ, 10 USC § 839(a), to determine if there had been prejudicial misconduct by court members. Defense counsel in his post-trial affidavit explained his inaction as follows:

> After my discussion with the members, I did not inform the military judge of the deliberations. Although I did discuss the members' decision with my immediate superior, I was concerned that if the military judge was made aware of the actions of the members, he would reconvene the court and instruct the members to further deliberate [sic] the sentence. This was of particular concern to me based upon my prior experiences with the military judge and the way in which he insisted upon instructing the members. The danger existed that the members would increase the sentence as a result of the military judge's additional instructions and anger against me after one of them told me about their deliberations. DS2 Straight and I discussed the matter and he decided that it was in his best interests to let the decision stand.

■ 33. Appellant now contends that his counsel was ineffective because he incorrectly believed that the sentence could be increased if he raised the issue of court-member misconduct. Appellant argues that, if defense counsel had properly researched the issue, he would have known that the sentence could not be increased upon reconsideration, and a post-trial hearing could have been held to determine whether there

had been court-member misconduct. Final Brief at 13–15. The Government argues that no error occurred during sentence deliberations which would have entitled appellant to relief. Answer to Final Brief at 26.

34. RCM 1009(a) allows a sentence to be reconsidered at any time before the record of trial is authenticated. It further provides that an announced sentence "may not be increased upon reconsideration unless the sentence announced was less than the mandatory minimum prescribed for an offense of which the accused has been found guilty." RCM 1009(b). *See* Art. 60(e)(2)(C), UCMJ, 10 USC § 860(e)(2)(C) (1983).

35. RCM 1102(b)(2) authorizes a post-trial Article 39(a) session "for the purpose of inquiring into, and, when appropriate, resolving any matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence." RCM 1102(d) authorizes the military judge to "direct a post-trial session any time before the record is authenticated[,]" and the convening authority to "direct a post-trial session any time before the convening authority takes initial action on the case."

36. Based on the foregoing, we conclude that defense counsel's concern about the sentence being increased upon reconsideration was erroneous. Defense counsel's decision to forgo requesting a post-trial session was deficient performance within the meaning of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We agree, however, with the Government that the second prong of *Strickland* is not met because appellant was not entitled to relief for the reasons set out in our resolution of Issue II (¶¶ 20–31). *See United States v. Loving*, 41 MJ at 245 ¶ 30, *citing Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993) (appellant "not entitled to 'a windfall'" from erroneous ruling).

### Decision

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and CRAWFORD concur.

WISS, Judge (concurring):

37. Pointing to a presumption of prejudice as a substitute for "inquiry into the thought processes of individual members," the majority admonishes "counsel and court members to be mindful of the obligation to protect the secrecy of deliberations." Accordingly, the majority instructs: "Even when the exceptions to Mil.R.Evid. 606(b) are triggered, disclosures should be limited to the fact and nature of the extrinsic evidence; the impact of the extrinsic evidence or influence on the deliberations or voting should not be disclosed." ¶ 31.

38. Unfortunately, the majority's reliance on Federal circuit cases and its use of language like "extrinsic material or influence" and "extrinsic evidence or influence" (¶ 31) makes it unclear whether the majority would extend the same presumption of prejudice to the *third* exception of Mil.R.Evid. 606(b)— the exception that is not in the counterpart Fed.R.Evid. 606(b): "whether there was unlawful command influence." If complained-of command influence was from *outside* the court-martial, then it would seem to fall, as well, within the second exception ("whether any outside influence was improperly brought to bear upon any member") and, thus, apparently would come within the presumption of .prejudice that the majority recognizes for such circumstances.

39. The question implicitly left open by the majority, ¶¶ 23, 30, however, concerns a case in which complained-of command influence comes from *within* the court membership itself, *inside* the members' deliberation room. *See, e.g., United States v. Loving,* 41 MJ 213, 310–15 ¶¶ 146–55 (CMA 1994) (Wiss, J., dissenting); *United States v. Greene,* 41 MJ 57, 58 (CMA 1994); *id.* at 59 (Sullivan, C.J., concurring in the result); *United States v. Carr,* 18 MJ 297, 302 (CMA 1984). While one might reason that the same policy arguments are equally compelling regarding the third exception as with the first two, the majority opinion does not expressly reassure the bench and bar that the same presumption would apply. Indeed, one might even fairly read the majority opinion as pointedly *not* offering such reassurance.

40. Accordingly, in the context of an issue (unlawful command influence) that, in its more usual setting, would require a showing of prejudice in order for an accused to obtain appellate relief, *see, e.g., United States v. Cruz,* 25 MJ 326 (CMA 1987); *United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987), it may be problematic for counsel blindly to follow the cautionary lead of the majority opinion in cases involving possible exercise of unlawful command influence by a member of the court-martial. If counsel does so, counsel might well be putting his client's interests injudiciously at risk, tremulously awaiting a day of appellate reckoning when the majority later might chastise counsel for not producing any evidence that the alleged unlawful command influence actually affected any of the subordinate members of the court.

41. With these cautionary words of my own, I concur in the majority opinion.