# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class CHARLES N. YOHE
## United States Air Force

## ACM 37950 (recon)

## 3 September 2015

Sentence adjudged 27 April 2011 by GCM convened at Offutt Air Force Base, Nebraska. Military Judge: William C. Muldoon.

Approved sentence: Bad-conduct discharge, confinement for 9 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Matthew T. King, Major Shane A. McCammon, Captain Johnathan D. Legg.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel Nurit Anderson, Major Daniel J. Breen; Captain Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and HECKER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

Appellant was convicted, contrary to his pleas, by a general court-martial composed of officer members of possessing and viewing sexually explicit depictions of minors, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement for 9 months and reduction to the grade of E-1. The

convening authority reduced the punitive discharge to a bad-conduct discharge and approved the remainder of the sentence as adjudged.

*Procedural History*

On 9 April 2013, we issued a decision affirming the findings and sentence in Appellant's case. *United States v. Yohe*, ACM 37950 (A.F. Ct. Crim. App. 9 April 2013) (unpub. op.). Mr. Laurence M. Soybel was an appellate judge on the panel that issued the decision, pursuant to an appointment by The Judge Advocate General of the Air Force. After the Secretary of Defense issued a memorandum on 25 June 2013 appointing Mr. Soybel to this court, we vacated our initial decision and issued a second one on 22 July 2013, reaffirming the substance and holdings of the prior decision. *United States v. Yohe*, ACM 37950 (A.F. Ct. Crim. App. 22 July 2013) (unpub. op.).

In September 2013, Appellant filed a petition for grant of review with our superior court. On 31 October 2013, our superior court dismissed the petition for review without prejudice. *United States v. Yohe*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). The record of trial was returned to our court on 13 March 2014.

On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect." In light of *Janssen*, we granted reconsideration on 29 April 2014, and permitted counsel for Appellant to file a supplemental pleading.

When Appellant's case was initially before us, he argued (1) the evidence was factually and legally insufficient to support his convictions, (2) the military judge violated his right to confrontation by admitting testimonial hearsay into evidence and (3) the military judge erred by admitting certain evidence. After we permitted Appellant to submit a supplemental assignment of errors, he raised the issue of post-trial delay, arguing his due process right to speedy appellate processing was violated under *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), and *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). In September 2014 and January 2015, we specified two issues: (1) whether the trial court's findings and sentence or this court's review are affected by the possibility that certain non-admitted evidence was improperly brought to the attention of the panel, and (2) whether the general verdict in the case must be set aside because certain images in the case were constitutionally protected.

With a properly constituted panel, we have reviewed Appellant's case, to include Appellant's previous and current filings and the previous opinions issued by this court. We affirm the findings, but, for the reasons provided below, consolidate the specifications. We affirm the sentence as adjudged.

*Background*

In May 2009, an investigator with the Nebraska state police used a law enforcement program to identify Internet protocol (IP) addresses that were sharing child pornography through peer-to-peer networks, including Limewire.[1] This automated program was operated from the investigator's computer and sent out queries using certain key words commonly associated with child pornography. If a peer-to-peer user's computer was on-line and the program was being used, his computer would automatically respond to the query by indicating it had a responsive file or files. The law enforcement program used this response to compare the suspect file to over four million items of known child pornography found in a law enforcement database, through a comparison of their "hash values," which are unique characters associated with digital files.[2] If the "hash values" of a suspect file matched one found in the law enforcement database, the program would automatically generate a report containing the "hash value," the name of the file, and the IP address of the computer that offered to share the file. Law enforcement personnel then used that information to conduct further investigation.

On 6 May 2009, the law enforcement program detected that an individual file of child pornography was present and available for sharing in a Limewire folder on a computer associated with a particular IP address. On 11 May 2009, the program repeated the query but no longer detected that file as present in the shared folder. It did, however, find a second file of child pornography there. The titles of these two files suggested sexual activity by 15- and 7-year-old children, and their "hash values" matched those for two child pornography videos found in a law enforcement database of known child pornography. The law enforcement program did not download either video onto the investigator's computer. Subsequent queries by the law enforcement program in June, July and August 2009, did not receive any responses indicating this IP address had made child pornography available for sharing.

Through a subpoena served on the Internet service provider, investigators learned the relevant IP address was assigned to Appellant in his on-base dormitory room, where he lived alone. Appellant's laptop computer was seized on 8 October 2009. A forensic examination of the computer's contents was conducted by the Defense Computer Forensic Laboratory (DCFL).

---

[1] Peer-to-peer file sharing is a means of obtaining and sharing files directly from other computer users who are connected to the Internet and who are also using the peer-to-peer file sharing software. Once the peer-to-peer file sharing software has been installed by the user, the user may interface directly with other computers that have the same file sharing software, and is able to browse and obtain files that have been made available for sharing on those other computers by typing search terms into the program's search field.

[2] The values are calculated using a mathematical algorithm and are also known as "Secure Hash Algorithm" (SHA) values. This mathematical figure will remain the same for an unchanged file, no matter where the file is found or on which computer the file is located. Changing the file name will not make a change to this value. Investigators compare the hash values of files in order to determine whether they are identical, a process described by the civilian investigator in this case as "thousands of times more reliable" than DNA testing.

Appellant was subsequently charged with and convicted of two specifications under Article 134, UCMJ: (1) viewing one or more visual depictions of minors engaged in sexually explicit conduct between 25 March 2008 and 8 October 2009, and (2) wrongfully and knowingly possessing one or more such depictions during that same time frame.

*Sufficiency of the Evidence*

We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

When examining Appellant's computer, the forensic examiner found that Limewire had been installed on Appellant's laptop. He did not find the two videos identified by the law enforcement program, which indicated to him that they had been deleted from the computer at an unknown time. The forensic examiner, however, found evidence that two videos with the same file name had been downloaded onto the hard drive of Appellant's computer through the use of Limewire. He also found evidence that a user of the computer previewed the two movies through Limewire as they were being downloaded. For one video, the evidence indicated (1) it was partially downloaded onto Appellant's computer on 9 December 2008, (2) it was successfully downloaded on 6 May 2009 (the same day the law enforcement program found it in Appellant's shared folder), (3) it was previewed and again partially downloaded on 7 May 2009, and (4) it was previewed again on 16 May 2009 and then successfully downloaded three minutes later. For the second video, the evidence revealed (1) it was partially downloaded onto Appellant's computer on 22 August 2008, (2) it was previewed on 11 May 2009 and then was successfully downloaded three minutes later (the same day the law enforcement program found it in Appellant's shared folder), and (3) it was again successfully downloaded on 16 May 2009.

The forensic examiner also found evidence that someone using the computer had at some point conducted five separate searches on Limewire, looking for files containing the terms "pthc" (an abbreviation commonly used for "preteen hard core"), "preteen

porn," "pedopedo," "young Latina" and "young." The two videos found by the law enforcement program both contained the word "pthc" in their filenames, and one filename also contained the words "preteen" and "pedo."

The forensic examiner also testified about 16 items he found inside several areas of Appellant's computer. One item was a three-minute video while the other fifteen were "thumbnails," which are reduced-sized versions of pictures. Some of the thumbnails depict obviously young, preteen boys engaging in homosexual acts and other obviously preteen children engaged in sexual acts and suggestive poses, and the video depicts a child engaging in oral sodomy.

Appellant argues he is not guilty of possessing or viewing the thumbnail images and three-minute video because (1) there was no evidence he knew these items were on his computer and (2) he could not access the areas of the computer where the items were located. He also contends the two videos cannot serve as the basis for his conviction of viewing child pornography as they do not depict minors engaged in sexually explicit conduct.

## A. Viewing of Child Pornography

Appellant generally does not dispute that someone used his computer to preview some portion of these two videos in May 2009. Instead, he contends there is insufficient evidence to prove he was the person who previewed them or, even if he did preview them, that he viewed them long enough to see the sexually explicit activity on them. For one of the videos, he also argues that the individuals depicted in them are not minors. We disagree.[3]

The Government presented strong circumstantial evidence that Appellant was the individual who was using the computer during the relevant time periods in May 2009 when these videos were previewed and/or downloaded. Only one user account and one user profile was associated with the computer's operating system, and the user account was password protected. Appellant's email address was associated with this user profile and the search term "pthc" was found in an area of the computer associated with that user profile. A close friend of Appellant testified he had never seen anyone else using Appellant's computer outside his presence and Appellant had never complained to him about someone doing so. Additionally, Appellant's work schedule revealed he was not

---

[3] Over defense objection, the members were shown the two videos from the law enforcement database whose "hash values" matched those found in Appellant's Limeware folder by the law enforcement program in May 2009. We find the military judge did not abuse his discretion by admitting these videos even though they were not found on Appellant's computer. *See United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009). As discussed in this opinion, the Nebraska state police investigator was able to determine exactly which videos were downloaded and previewed on Appellant's computer through the use of their hash values. The court members were able to view copies of these recordings and see precisely what movies were previewed and downloaded. We do not find that the military judge abused his discretion, nor do we find that the members would have been confused or misled or that Appellant was unfairly prejudiced by the admission of the videos.

working at any of the times in May 2009 when the videos were being downloaded and previewed, and no downloads or previews occurred while he was working during this time period.

Similarly, we find sufficient evidence present to conclude that Appellant viewed the portions of these two videos that contained the depictions of minors engaging in sexually explicit conduct. These two videos were available for previewing and downloading because Appellant used Limewire to search for files containing terms strongly indicative of child pornography, received a list of files containing some of those terms (and whose file names described sexual activity by children), and selected these two files from that list to download onto his computer. He then took the further affirmative step of clicking again on the files so he could preview them as they were downloading.

Under the totality of the circumstances, we conclude the evidence is both factually and legally sufficient to establish Appellant was intentionally searching for child pornography in May 2009, found it through Limewire after using search terms designed to find it, selected these two files for downloading and then watched these videos while they were downloading.[4] Having evaluated the entire record of trial, we are therefore convinced Appellant's conviction for viewing one or more visual depictions of minors[5] engaged in sexually explicit conduct is legally and factually sufficient, based solely on these two videos.

### B. Possession of Child Pornography

In arguing the evidence is insufficient to sustain his conviction for possessing images of child pornography, Appellant relies heavily on our superior court's decision in *United States v. Navrestad*, 66 M.J. 262 (C.A.A.F. 2008). There, the accused used a public computer to search for and view child pornography images from the Internet, leading him to several public online file storage folders created by users of an Internet service provider. *Id.* at 264, 268. He opened these storage folders and viewed their contents, which included images of child pornography. *Id.* at 264. Although these images were automatically saved onto the computer's hard drive, our superior court found the accused lacked sufficient dominion and control to knowingly "possess" them. *Id.* at 268.

---

[4] For the reasons discussed below, we do not find the evidence sufficient to prove Appellant viewed the other images in this case.

[5] In one video, a young female reads a newspaper at a kitchen table for approximately 14 seconds, goes into a bedroom and disrobes, and, approximately 1 minute later, engages in masturbation. In the second video, a young male and young female are naked together in a bathtub and engage in sexual activity for almost 9 minutes. There is no question that the young girl engaging in sexual behavior in the first movie was under 18 years old. Although Appellant argues the two individuals in the second video are clearly over 18 years old, we conclude otherwise, and find that a reasonable fact-finder could as well.

In reaching this conclusion, the court found the following facts to be significant: (1) there was no evidence the accused knew the images were being automatically saved onto the hard drive; (2) there was no evidence the accused emailed, printed or purchased copies of the images, (3) users on this public computer could not access the computer's hard drive or download the images onto a portable storage device, and (4) the accused did not have the ability to control who else had access to the images in their location on the Internet. *Id.* at 267–68. Within this context, the court concluded the accused's actions with the images "went no further" than viewing them and this "viewing alone does not constitute 'control' as the term is used" in child pornography possession cases. *Id.* Such possession must be "knowing and conscious." *Id.* at 267.

Because the holding in *Navrestad* was based on unique facts, we do not find it dispositive as to whether Appellant possessed the two videos detected by the law enforcement program in May 2009. Unlike the accused in *Navrestad*, Appellant viewed these videos of child pornography on his personal computer; and he, through the use of the Limewire program, directed that the two videos be downloaded onto the hard drive of his computer. We recognize that these two videos were no longer on Appellant's computer when it was forensically examined. However, those items were present in a user-accessible area of his computer (the "shared" Limeware folder) on the days in May 2009 when his computer offered to share them in response to a query sent by the law enforcement program, as well as on several other days. Under those facts, we find Appellant knowingly and consciously possessed the images and exercised the dominion and control necessary to constitute "possession" of them. Therefore, the evidence is factually and legally sufficient to convict Appellant of wrongfully and knowingly possessing one or more visual depictions of minors engaging in sexually explicit conduct.

We reach a different result as to whether Appellant possessed the thumbnail images of child pornography found on his computer. All these items were found in locations associated with either the computer's backup system or temporary files, rather than in locations where computer users typically save or store files.[6] The forensic examiner testified the thumbnail images were automatically created by the computer when a user viewed a photograph or video on the computer or when the computer conducted a system backup at a given point, and remained even after the original image was deleted. As with the video files discussed above, the forensic examination did not find the original photographs or videos that resulted in the creation of these thumbnails. Unlike those video files, however, the forensic examiner could not determine the file names of the original photographs or videos that resulted in these thumbnails, or when a user downloaded or viewed those items. Therefore, there is not proof beyond a reasonable doubt that Appellant was the one who viewed them. Furthermore, these thumbnails were found in areas of the computer that an average computer could not access without specialized computer software, none of which was found on Appellant's

---

[6] These inaccessible areas included the hard drive's unallocated space or clusters, index files, thumbcache databases and shadow volume.

computer. There was no evidence presented that Appellant knew the images were being saved onto his hard drive in that manner, nor was there evidence that Appellant possessed specialized computer skills. A similar problem exists with the three-minute video, found in the unallocated space on Appellant's computer.

Under these circumstances, we find the evidence factually and legally insufficient to prove Appellant knowingly and wrongfully possessed or viewed these 16 visual depictions or that he possessed or viewed the original depictions that resulted in their creation. *See United States v. Sanchez*, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (upholding a possession conviction based on deleted files and files located in the computer's cache based on other evidence, including the accused's relative sophistication in computer matters), *aff'd in part, rev'd in part on other grounds*, 60 M.J. 329 (C.A.A.F. 2004); *United States v. Nichols*, NMCCA 201300321, unpub. op. at 11–12 (N.M. Ct. Crim. App. 18 September 2014) (unpub. op.) (holding there was "no question the appellant possessed child pornography" but "did not 'knowingly possess' child pornography on the date charged" because the files were located in unallocated space and there was no evidence that the appellant had the ability to retrieve files from unallocated space); *Accord United States v. Flyer*, 633 F.3d 911, 919-20 (9th Cir. 2011) (citing *Navrestad* and holding that evidence was legally insufficient to prove knowing possession of child pornography in unallocated space); *United States v. Moreland*, 665 F.3d 137, 154 (5th Cir. 2011) (refusing to find constructive possession of child pornography in unallocated space without additional evidence of the defendant's knowledge and dominion or control of the images); *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006) (holding that a defendant who lacks knowledge about and access to cache files should not be charged with possessing child pornography images located in those files without additional evidence of dominion and control over the images).[7]

### C. Consolidation of the Specifications

As described above, we have found Appellant guilty of viewing and possessing one or more visual depictions of minors engaged in sexually explicit conduct, based solely on the two video recordings detected by the law enforcement program in May 2009. We have also concluded that his possession of those recordings was not simply incident to his viewing of the recordings. Under ordinary circumstances, therefore, we would affirm both specifications.

Here, however, the military judge instructed the panel that "[i]n order to 'possess' a computer file, the Accused must have been able to manipulate the image in some way. Manipulation includes saving, deleting, editing or <u>viewing</u>." (emphasis added). Once

---

[7] *See generally* Katie Grant, *Crying over the Cache: Why Technology has Compromised the Uniform Application of Child Pornography Laws*, 81 Fordham L. Rev. 319 (October 2012); J. Elizabeth McBath, *Trashing our System of Justice? Overturning Jury Verdicts Where Evidence is Found in the Computer's Cache*, 39 Am. J. Crim. L. 381 (2012).

that instruction was given, Appellant would automatically be convicted of possessing the images once it is determined he viewed them.[8] Under these unique circumstances, we elect to consolidate the two specifications and so direct in our decretal paragraph. *See United States v. Campbell*, 71 M.J. 19, 22-23 (C.A.A.F. 2012). Because the panel was also instructed they must consider the "viewing" and "possessing" specification as "one offense" for which Appellant faced a maximum of 10 years confinement, we find the Appellant's sentence was not affected by the lack of consolidation at trial.

### *Admission of Thumbnail Images and the Three-Minute Video*

We have concluded Appellant's conviction is based solely on the two videos detected by the law enforcement program in May 2009. We must, therefore, assess whether Appellant was prejudiced by the admission of the 15 thumbnail images and the three-minute video that we have not used to support Appellant's conviction.

First, we note the trial counsel argued to the panel that Appellant could be convicted of both specifications based solely on his actions with the two videos, and that the thumbnails found on the computer simply prove that Appellant acted purposefully. In light of this argument, the evidence, and the military judge's instructions, it is possible the panel concluded, as did we, that the government only proved beyond a reasonable doubt that Appellant viewed and possessed the two videos. Under these circumstances, Appellant would not have been prejudiced in sentencing regarding the other items admitted into evidence.

Moreover, we find this evidence would have been otherwise admissible. The three minute video and 13 of the 15 thumbnail images clearly are sexually explicit depictions of minor children and would have been admissible under Mil. R. Evid. 404(b) as proof of Appellant's intent, knowledge, or absence of mistake or accident regarding his actions with the two videos. Mil. R. Evid. 404(b); *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (holding that in order to be admissible, the evidence of uncharged misconduct must "reasonably support a finding" that the accused committed that misconduct and proof beyond a reasonable doubt is not required). The other two thumbnail images depicted fully-clothed children who are not engaged in any sexual activity. However, the government told the panel these two images were snapshots of the first frame of a longer video that depicted sexually explicit conduct. The Nebraska investigator then testified that, based on his knowledge from other child pornography cases, these two snapshots are from two videos which depict a 15-year-old and 9-year-old child engaging in oral sodomy.[9] The forensic examiner testified that the presence of all

---

[8] We note that this instruction is to some extent inconsistent with *Navrestad's* holding that viewing alone does not always constitute possession.

[9] In light of this and our own conclusions about the sufficiency of the evidence on appeal, we find the introduction of these two thumbnail images did not create a circumstance where Appellant may have been convicted based in part on conduct that is constitutionally protected. Furthermore, even if such a circumstance did exist, in light of our superior court's recent ruling in *United States v. Piolunek*, it is no longer necessary to reject an entire verdict simply

these items on Appellant's computer meant the original images were on that computer at some point. Under these circumstances, we find these images and testimony would have been admissible under Mil. R. Evid. 404(b).[10]

This evidence would also have been admissible in sentencing under Rule for Courts-Martial (R.C.M.) 1001(b)(4) as an aggravating circumstance directly relating to or resulting from the offenses of which Appellant was convicted. *United States v. Wingart*, 27 M.J. 128, 135 (C.M.A. 1998). As such, the evidence could be used to inform the sentencing authority's judgment regarding the charged offense as well as placing that offense in context, including the facts and circumstances surrounding the offense. *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001); *United States v. Mullens*, 29 M.J. 398, 400-01 (C.M.A. 1990); *United States v. Vickers*, 13 M.J. 403, 406 (C.M.A. 1982); *see also United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006). Therefore, we are convinced beyond a reasonable doubt that the admission of the 15 thumbnail images and 3-minute video did not prejudice Appellant.

Appellant also contends that the military judge erred by allowing the government to admit testimonial hearsay about the two images depicting fully-clothed children by introducing portions of the DCFL report that stated the images "contain[ed] known child victims based on analysis with the National Center for Missing and Exploited Children (NCMEC) database" when no one from NCMEC testified at trial. The decision as to whether the admitted evidence violates the Confrontation Clause is reviewed de novo. *See, e.g., United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008); *United States v. Rankin*, 64 M.J. 348, 351 (C.A.A.F. 2007). Here, we are convinced that any error in its admission was harmless beyond a reasonable doubt. *United States v. Sweeney*, 70 M.J. 296, 306 (C.A.A.F. 2011); *see Rankin*, 64 M.J. at 353.

Among the factors we consider in assessing harmlessness in this context are: (1) the importance of the testimonial hearsay to the prosecution's case, (2) whether the testimonial hearsay was cumulative, (3) the existence of other corroborating evidence, (4) the extent of confrontation permitted, and (5) the strength of the prosecution's case. *Sweeney*, at 306 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684). After analyzing these factors, we find that any error in admitting this information was harmless. First, as described above, the two images of the children were snapshots from pornographic movies; thus, the images themselves were minimally important to the Government's case. Second, the fact that the individuals in these images were under the age of 18 is clear

---

because some of the conduct that resulted in the verdict was constitutionally protected. 74 M.J. 107, 111–12. (C.A.A.F. 2015) ("Contrary to our conclusion in *Barberi*, convictions by general verdict for possession and receipt of visual depictions of a minor engaging in sexually explicit conduct on divers occasions by a properly instructed panel need not be set aside after the [service court] decides several images considered by the members do not depict the genitals or pubic region.").

[10] Because the admission of evidence under Mil. R. Evid. 404(b) is also subject to the balancing test of Mil. R. Evid. 403, we also find the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice.

upon a review of the images themselves.  Third, approximately 20 other images in the report were not labeled as depicting known child victims identified by NCMEC, and they clearly depicted children engaged in sexual acts; thus, allowing NCMEC's identification of two pictures was of minimal impact.  Fourth, the NCMEC comment that these children were under the age of 18 was not relied upon by trial counsel, and the members were not informed of the significance of the NCMEC reference.  Fifth, the Nebraska state investigator had personal knowledge of the age of these two children, and he was present and testified about it, subject to cross-examination.  Finally, Appellant's trial defense strategy did not hinge on the age of the people in these two images as the defense was focused on the lack of proof that Appellant possessed or viewed them.  Based on the forgoing, we find that, even if these NCMEC references constituted testimonial hearsay whose admission violated the Confrontation Clause, that error was harmless beyond a reasonable doubt.

*Non-Admitted Evidence Provided to Members*

The military judge admitted a DVD disc into evidence as Prosecution Exhibit 4.  While establishing the foundation for the DVD and before the panel, the Nebraska investigator described this DVD as containing "IP history log files" and two video files[11] associated with those log files.  The investigator further stated that he verified the contents of the DVD that same day.  The record does not reflect whether the military judge, trial counsel, or trial defense counsel examined the contents of the DVD prior to its going to the members.

Prior to instructions and argument, the parties held an Article 39(a), UCMJ, session to discuss how the members would review the videos on Prosecution Exhibit 4 (as well as the thumbnail images found on Prosecution 8).  With the agreement of the parties, the panel was told they would be sent into the deliberation room with the DVDs and a laptop so they could view the "images and the videos that are at issue" in the case.  The military judge said "the only things that are on the DVDs should be" three videos and a number of still images.  One representative from each side was authorized to go into the deliberation room with the investigator who was setting up the laptop for the panel.  Following a brief recess, the military judge stated "the members did review the materials."  After hearing instructions and closing argument, the panel was again given the two DVDs and the laptop, to use during their deliberations.  The military judge instructed the panel to discuss "all the evidence that has been presented" to them.

This court's review of Prosecution Exhibit 4 revealed that Prosecution Exhibit 4 contained extraneous documents beyond the "log files" and videos.  We then directed the parties to brief whether the trial court's findings and sentence or this court's review are affected by this error.

---

[11] These are the two video files discussed above that were not on Appellant's computer, but, based on their hash values, were found in the investigator's database of child pornography.

The findings of a court-martial may be impeached "when extraneous prejudicial information was improperly brought to the attention of a member." R.C.M. 923. In some circumstances, evidence that court members considered extraneous prejudicial information from a third party or from outside materials can be considered in deciding whether the findings or sentence are impeached. Mil. R. Evid. 606(b); *United States v. Straight*, 42 M.J. 244, 250 (C.A.A.F. 1995). Because Mil. R. Evid 606(b) would prohibit members from disclosing the subjective effects of such extrinsic influences on their deliberations, there is a presumption of prejudice from such influences. *Straight*, 42 M.J. at 249.

The burden is on the Government to rebut that presumption by proving harmlessness. *Id.* (citing *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir. 1981)). In the absence of an objection at trial, we apply a plain error analysis under which Appellant must show that there was an error, that the error was plain or obvious, and that the error materially prejudiced a substantial right. *United States v. Reyes*, 63 M.J. 265, 267 (C.A.A.F. 2006).

Here, in order to protect the secrecy of panel deliberations, we presume the members viewed and considered all the evidence presented to the panel, including the extraneous documents erroneously included on Prosecution Exhibit 4. *Id.* In his brief, Appellant only expressly complains about one such document contained on the DVD—a multi-page unsigned affidavit by an agent with the Air Force Office of Special Investigations (AFOSI) asking the 55th Mission Support Group commander for authorization to search Appellant's dormitory room and seize computers and other materials.[12] This document is entitled "YOHE Search Authority."

It was a plain and obvious error for this document to be provided to the panel members without being admitted into evidence. To determine whether this error had a prejudicial impact on the findings or sentencing process, we must consider whether the panel might have been substantially swayed by the error. *United States v. Clark*, 62 M.J. 195, 201 (C.A.A.F. 2005) (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). To prevail, the government must demonstrate the error "did not have a substantial influence on the findings." *Clark*, 62 M.J. at 200. In evaluating this issue, we consider "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* at 200-201 (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999).

This document contains factual assertions and legal conclusions by a non-testifying AFOSI agent, based on his investigation and experience and that of the Nebraska investigator. The affidavit discusses computer technology (including peer-to-

---

[12] The other materials were (1) a document entitled "subpoena" which is a subpoena to an Internet service provider for records relating to an IP address that did not belong to Appellant, and (2) 36 pictures associated with the search of Appellant's dormitory room, four of which were admitted into evidence at trial.

peer systems) and their role in the proliferation of child pornography. It states Appellant's IP address had made available for sharing two videos of suspected child pornography. The AFOSI agent opines the female in one video is between 10 and 12 years old, and the two individuals in the second video are between 14 and 16 years old. He also asserts that the videos are child pornography. The affidavit concludes "that probable cause exists to believe there has been a violation of . . . Article 134, UCMJ which prohibits possession, advertising, promoting, presenting, distributing, or soliciting through interstate or foreign commerce by any means, child pornography . . . ."

In determining whether the verdict in this case should be impeached, we attempt to determine any prejudicial impact the extraneous evidence had on the members' deliberations. *See United States v. Diaz*, 59 M.J. 79, 91 (C.A.A.F. 2003). In assessing the impact, we consider whether there is a reasonable possibility the evidence influenced the members' verdict. *See United States v. Ureta*, 44 M.J. 290, 299 (C.A.A.F. 1996). In making this determination, we consider what additional evidence the members considered that supported their verdict. *Id.*

The affidavit contains extraneous prejudicial information. The affidavit would not have been evidence that the Government could have admitted during either its findings case or sentencing case. The document contains a few pieces of information not otherwise before the members, but we find the affidavit, even if read by the panel, would not have had an impact on the verdict or sentence. Most of the information in the affidavit was presented at trial by the civilian investigator who investigated Appellant's misconduct. This same investigator is referred to as the source of much of the information in the affidavit. While the affidavit contains a few additional details about file sharing networks and computers not testified to at trial, we find these details would not have influenced the panel's findings. Similarly, reading the affidavit's conclusion concerning probable cause would not have been prejudicial, given the other evidence available to the members.

By far the most damning evidence came from the analysis of Appellant's computer after it was seized. An analysis of the Appellant's computer showed he had the sole user profile and that profile was used to search for and look at child pornography. We conclude that it was not reasonably possible that the extraneous evidence influenced the members' verdict and, therefore, the presumption of prejudice has been rebutted.

*Post-Trial Processing Delays*

Appellant argues, citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), that unreasonable post-trial delay warrants relief. Appellant further cites *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), noting this court's broad power and responsibility to affirm only those findings and sentence that should be approved.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this court. *Moreno*, 63 M.J. at 142. The *Moreno* standards continue to apply as a case continues through the appellate process; however, the *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013); *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see Barker*, 407 U.S. at 530.

This case was originally docketed with this court on 22 June 2011, and our initial decision was issued on 9 April 2013, over 21 months later. We then *sua sponte* reconsidered our decision and issued an opinion on 22 July 2013, 25 months after the initial docketing. Both decisions exceeded the *Moreno* standards and were, therefore, facially unreasonable. Our opinions did not address the presumptively unreasonable delay. Conducting that analysis now, we note that Appellant did not make a demand for speedy appellate processing and thus did not reference any prejudice he suffered from the delay.[13] When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in the initial processing of this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced that even if there is error, it is harmless beyond a reasonable doubt.

The time between our superior court's action to return the record of trial to our court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered and we do not examine the remaining *Barker* factors. *See Id.* at 136; *Toohey*, 60 M.J. at 102.

---

[13] We reject Appellant's intimation that, because the Secretary of Defense's appointment of the civilian employee was invalid and of no effect, the *Moreno* clock was not tolled by our earlier decisions. We thus decline to consider the time from initial docketing on 22 June 2011 until this opinion as uninterrupted for purposes of analysis under *Moreno*.

A finding of harmless error does not end the inquiry, as we may grant sentence relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif*, 57 M.J. at 224; *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to Appellant or to the institution, if relief is consistent with the goals of both justice and good order and discipline, and can this court provide any meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.*

After considering the relevant factors in this case, we determine that no relief is warranted. Although the initial delay exceeded the *Moreno* standard by seven months, no other time period exceeded the standards. Even analyzing the entire period from the time the case was first docketed until today, we find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay after our initial decision was to allow this court and our superior court to fully consider a constitutional issue of first impression concerning whether the Secretary of Defense has the authority under the Appointments Clause[14] to appoint civilian employees to the service courts of criminal appeals. Subsequent delays were the result of a thorough analysis of the casefile,[15] and providing the parties the opportunity to fully brief the evolving case law regarding general verdicts in child pornography cases.[16] Based on these facts, we find no evidence of harm to the integrity of the military justice system.

Based on our review of the entire record, we conclude that sentence relief under Article 66, UCMJ, is not warranted.

---

[14] U.S. CONST. art II § 2, cl. 2.

[15] The review by this court uncovered the extraneous matters included in Prosecution Exhibit 4 that Appellant and the Government had overlooked.

[16] *See United States v. Barberi*, 74 M.J. 127 (C.A.A.F. 2012) *overruled by United States v. Piolunek*, 74 M.J. 107 (C.A.A.F. 2015).

*Conclusion*

The specifications of the Charge and Additional Charge are hereby consolidated into one specification that reads as follows:

> In that AIRMAN FIRST CLASS CHARLES N. YOHE, United States Air Force, 55th Security Forces Squadron, Offutt Air Force Base, Nebraska, did, at or near Offutt Air Force Base, Nebraska, between on or about 25 March 2008 and on or about 8 October 2009, wrongfully and knowingly possess and view one or more visual depictions of minors engaged in sexually explicit conduct, which conduct was prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces.

With this modification, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 37950 (recon)